The **DUPLAN CORPORATION,**
Appellee,

v.

**MOULINAGE et RETORDERIE de
CHAVANOZ, Appellant,**
**Deering Milliken, Inc., et al.,**
Defendants.

No. 73–1618.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1973.

Decided Oct 23, 1973.

Jay Greenfield, New York City (Butler, Means, Evins & Browne, Spartanburg, S. C., Paul, Weiss, Rifkin, Wharton & Garrison, Morgan, Finnegan, Durham & Pine, Simon H. Rifkind, New York City, Thomas A. Evins, Spartanburg, S. C., and Robert S. Smith, New York City, on brief), for appellant.

Fletcher C. Mann and O. G. Calhoun, Jr., Greenville, S. C. (Allan Trumbull on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

FIELD, Circuit Judge:

We entertained this appeal upon the narrow question whether upon the termination of litigation the work product documents prepared incident thereto lose the qualified immunity extended to them under Rule 26(b)(3), Federal Rules of Civil Procedure,[1] and become freely discoverable in subsequent and unrelated litigation.

In this multidistrict patent-antitrust proceeding, resolution of this question is of vital importance with respect both to depositions and requests for production of documents.[2] The district judge initially concluded "that once the privilege attaches it remains regardless of the litigation in which discovery is sought." However, in the course of the extensive discovery proceedings he reconsidered his position and concluded "that (1) when a case in litigation is finally terminated; (2) by either a decision of the court or by settlement among the parties; (3) the work product privilege is also terminated; and (4) the work product of attorneys in the prior litigation is therefore subject to discovery in subsequent litigation." Recognizing the importance of his ruling the district judge certified his order for interlocutory consideration pursuant to 28 U.S.C. § 1292(b) and we granted the appeal. We disagree with the conclusion of the district judge and reverse.

From the time the Federal Rules were first adopted one of the most litigated questions relative to the scope of discovery has been the extent to which a party may obtain disclosure and inspection of the documents and information developed during the course of an opponent's preparation for trial. As a result of the flood of inconsistent decisions in this area, in June of 1946 the Advisory Committee on Rules proposed an amendment to Rule 30(b).[3] The Supreme Court did not

1. Rule 26(b)(3), Fed.R.Civ.P., reads as follows:

*Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the material by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

2. It appears to be conceded that the documents claimed by Moulinage et Retorderie de Chavanoz [hereinafter referred to as Chavanoz] to be work product were generated incident to (1) a series of lawsuits in the early 1960s in which Leesona Corporation claimed that United States patents owned by it were infringed by the sale and operation of machines manufactured by a licensee of Chavanoz, or (2) a series of proceedings in foreign countries relative to the validity and infringement of foreign counterparts to the Chavanoz patents here in issue. It is further conceded that each of these litigations was terminated prior to the commencement of the present case.

Counsel for appellant submitted to this court copies of three "illustrative documents," the first of which appears to be notes of a meeting attended by four representatives of Chavanoz, two French patent counselors, a British solicitor and a patent agent. The document states that the purpose of the meeting was to "discuss the possible mounting of an infringement action against Klinger Manufacturing Co. * * *," and such litigation was later instituted. The second document is a working draft, including handwritten notes, of a memorandum prepared by Leo Soep, patent counselor for Chavanoz, relative to infringement litigation between Chavanoz and Leesona. The third document is a legal opinion from an attorney specializing in antitrust matters directed to an attorney specializing in patent matters relative to litigation against Leesona Corporation then pending in the District Court of Massachusetts.

3. Report of Proposed Amendments, June, 1946. Reprint, 5 F.R.D. 433, 456.

adopt the proposed amendment but dealt with the problem in the landmark case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman* the Court recognized a qualified immunity for what it characterized as the "work product of the lawyer" and held that it was discoverable only upon a substantial showing of "necessity or justification."[4] Unfortunately, in the succeeding years the courts failed to apply the principles of *Hickman* in a definitive or uniform manner, and one court went so far as to state that the decision had opened a veritable "Pandora's box."[5]

With the decisions of the district courts going off in different directions, the Advisory Committee once again turned its attention to the troublesome subject of work product. In a preliminary draft in 1967, the Committee suggested a new Rule 26(b)(3) defining work product and allowing discovery thereof "only upon a showing of good cause therefor."[6] The proposal was roundly criticized especially by those who felt that the test of "good cause" would not provide sufficient protection for work product material, and it was suggested that the "badly tarnished good cause test of Rule 34" would lower the barrier set in *Hickman. See* Freund, Work Product, 1968, 45 F.R.D. 493, 495. Responsive to this widespread criticism the proposal was altered and finally cast in the form in which it was adopted by the Supreme Court in 1970. It is generally conceded that the new Rule reflects the rationale of *Hickman,* and Professor Wright characterizes it as "an accurate codification of the doctrine announced in the Hickman case * * *."[7]

There is, of course, nothing in the Rule itself that suggests a specific answer to the question before us, nor is there any indication in the Advisory Committee Note to Rule 26(b)(3) that the Committee gave any particular thought to this problem.[8] However, since the Rule tracks Hickman the answer must, primarily, be gleaned from that decision.

The theme of *Hickman* is succinctly stated in Mr. Justice Murphy's prefatory statement:

"Examination into a person's files and records, including those resulting from the professional activities of an attorney, must be judged with care. It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work. At the same time, public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task." 329 U.S. at 497, 67 S.Ct. 385, at 387, 91 L.Ed. 451.

And disapproval of *carte blanche* incursions is manifest in the now classic statement:

"Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." 329 U.S. at 511, 67 S.Ct. 385, at 393, 91 L.Ed. 451.

■ *Hickman* clearly stands for the principle that the integrity of the ad-

---

4. 329 U.S. at 510, 67 S.Ct. 385, 91 L.Ed. 451.

5. Viront v. Wheeling & Lake Erie Ry. Co., 10 F.R.D. 45, 47 (N.D.Ohio 1950).

6. Preliminary Draft of Proposed Amendments to Rules of Civil Procedure relating to Dep-

ositions and Discovery, November, 1967. Reprint, 43 F.R.D. 225.

7. 8 Wright & Miller, Federal Practice and Procedure, p. 193.

8. *See* Federal Rules of Civil Procedure, Amended Rules, March 30, 1970. Reprint, 48 F.R.D. 459, 497.

versary process must be safeguarded in spite of the desirability of the free interchange of information before trial. Its overriding concern is that the lawyer's morale be protected as he performs his professional functions in planning litigation and preparing his case. This work product immunity is the embodiment of a policy that a lawyer doing a lawyer's work in preparation of a case for trial should not be hampered by the knowledge that he might be called upon at any time to hand over the result of his work to an opponent.[9] The concern of the Court for the integrity of the practicing bar was made crystal clear in the trenchant concurrence of Mr. Justice Jackson when he stated that "[t]he primary effect of the practice advocated here would be on the legal profession itself," [10] and "[t]he real purpose and the probable effect of the practice ordered by the district court would be to put trials on a level even lower than a 'battle of wits'." [11] Mr. Justice Jackson then proceeded to point out the practical and undesirable professional consequences that could result from such a broad concept of the discovery process.

While, of course, the Court in *Hickman* was addressing itself to material obtained by an attorney incident to the litigation then in progress, the rationale is scarcely less applicable to a case which has been closed than to one which is still being contested. The decision was not in any manner based upon the rights or posture of the litigants vis-a-vis each other.[12] Such a basis was expressly disavowed.[13] Rather, the thrust of the decision was the qualified protection of the professional effort, confidentiality and activity of an attorney which transcends the rights of the litigants. This concern was reiterated in the final words of the *Hickman* opinion:

"We fully appreciate the wide-spread controversy among the members of the legal profession over the problem raised by this case. (footnote omitted) It is a problem that rests on what has been one of the most hazy frontiers of the discovery process. But until some rule or statute definitely prescribes otherwise, we are not justified in permitting discovery in a situation of this nature as a matter of unqualified right. When Rule 26 and the other discovery rules were adopted, this Court and the members of the bar in general certainly did not believe or contemplate that all the files and mental processes of lawyers were thereby opened to the free scrutiny of their adversaries. And we refuse to interpret the rules at this time so as to reach so harsh and unwarranted a result." 329 U. S. at 514, 67 S.Ct. 385, 395, 91 L.Ed. 451.

This is strong judicial language and we find no indication that the Court intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit.[14] To so

9. *See* Radiant Burners, Inc. v. American Gas Association, 207 F.Supp. 771, 776 (N.D.Ill. 1962).

10. Hickman v. Taylor, supra, 329 U.S. at 514, 67 S.Ct. 385, 395, 91 L.Ed. 451.

11. *Id.* 329 U.S. 495 at 516, 67 S.Ct. 385, at 396, 91 L.Ed. 451.

12. In *Hickman* the Court recognized that the materials sought fell outside the scope of the attorney client privilege. That privilege is for the protection and benefit of the client and not of the attorney. On the other hand, the attorney "work product" privilege is traditionally a privilege of the attorney and not of the client, and it has been held that waiver of the attorney-client privilege does not con-

stitute a waiver of an objection that the information falls within the qualified immunity from discovery provided by the work product rule. Vilastor-Kent Theatre Corp. v. Brandt, 19 F.R.D. 522 (S.D.N.Y.1956) ; Developments in the Law, Discovery, 1961, 74 Harvard Law Review 940–1044, 45.

13. 329 U.S. at 507, 67 S.Ct. 385, 91 L.Ed. 451.

14. The Court in *Hickman* adverted to the English concept of "professional privilege." 329 U.S., n. 9, p. 510, 67 S.Ct. 385, 91 L.Ed. 451. In England the privilege, which includes all documents prepared by or for counsel in pending or anticipated litigation, is recognized in subsequent litigation as well as the

interpret *Hickman* would in our opinion elide the broad rationale of the Court's decision. Assuredly, the intrusion upon the attorney and the possibility of the demeaning professional consequences envisioned by Mr. Justice Jackson are just as objectionable in one case as the other. We are well aware of the divergent conclusions reached in similar cases [15] but in all deference we think that those courts which permitted unqualified disclosure misread the basic teaching of *Hickman*.

█ On balance, we think the legal profession and the interests of the public are better served by recognizing the qualified immunity of work product materials in a subsequent case as well as that in which they were prepared, and this in our opinion comports with the statement in *Hickman*:

"But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe is necessarily implicit in the rules as now consti-

law suit in which it is prepared. Lord Justice Bowen in Lyell v. Kennedy, 27 Ch.Div. 1 (C.A.1884), stated the basis of the English privilege:

"Then comes the point as to documents, and as to the documents, I agree with everything that has been said by the Lord Justice. We are not dealing now with documents which the party has procured himself; we are dealing with documents which have been procured at the instigation of a solicitor; and, bearing in mind the rule of privilege which the law gives in respect of information obtained by a solicitor, it seems to me we cannot make the order asked for by Mr. MacClymont without doing very serious injustice in this case. A collection of records may be the result of professional knowledge, research and skill, just as a collection of curiosities is the result of the skill and knowledge of the antiquarian or *virtuoso*, and even if the solicitor has employed others to obtain them, it is his knowledge and judgment which have probably indicated the source from which they could be obtained. It is his mind, if that be so, which has selected the materials, and those materials, when chosen, seem to me to represent the result of his professional care and skill, and you cannot have disclosure of them without asking for the key to the labour which the solicitor has bestowed in obtaining them."

In Pearce v. Foster, 15 Q.B. Div. 114 (C.A. 1885) the documents sought had been prepared for use in an action which did not ultimately proceed. The court recognized that the documents fell within the scope of the privilege delineated in Lyell v. Kennedy, supra, and went on to state at page 119:

"Then the question arises whether, assuming them to be within this privilege, the privilege is any the less applicable because in the present case the inquiries with regard to the documents are being made in an action other than that in regard to which they were originally brought into existence. I do not think, if they were privileged in relation to the first action, that the privilege ceases in relation to another action. The case of Bullock v. Corry (1) seems to me to be an authority for that conclusion, and the judgment of Cockburn, C. J., in that case, lays down a most valuable principle on this subject. There the documents in question were being inquired about in a different action from that in relation to which they originally came into existence, and the Lord Chief Justice said: 'The privilege which attaches by the invariable practice of our Courts to communications between solicitor and client ought to be carefully preserved. In my opinion the rule is, once privileged always privileged. This will apply à fortiori where the succeeding action is substantially the same as that in which the documents were used.'"

15. *See* Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 16 F.R.D. 537 (D.Del.1954); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407 (M.D.Pa.1962); Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117 (M.D.Pa.1970). *Cf.* Insurance Company of North America v. Union Carbide Corp., 35 F.R.D. 520 (D.Colo.1964); LaRocca v. State Farm Mutual Automobile Insurance Co., 47 F.R.D. 278 (W.D.Pa.1969). *See also* Republic Gear Co. v. Borg Warner Corp., 381 F.2d 551 (2 Cir. 1967).

In some cases the courts have held that documents prepared for one case are protected in a second case only if the two cases are "closely related." In our opinion to dispose of this delicate and important question by such a technical touchstone is incompatible with the essential basis of the *Hickman* decision.

tuted." 329 U.S. at 512, 67 S.Ct. 385, at 394, 91 L.Ed. 451.

Our decision will not in any way frustrate the ends of justice. If the party seeking discovery can demonstrate the substantial need and undue hardship specified in the Rule and recognized in *Hickman,* the district court will order production.[16] We think it appropriate and desirable that the district judge determine whether a party has made a showing sufficient to justify such an intrusion upon the privacy of an attorney's files.[17]

The order appealed from will be reversed and we remand to the district court for further consideration consistent with this opinion.

Reversed and remanded.

---

16. In their brief counsel for appellee contend that they had satisfied the "substantial need" and "undue hardship" requirements of Rule 26(b)(3). This issue is not properly before us on this interlocutory appeal and we express no opinion on this phase of the controversy. This, of course, is a matter which properly should be considered and determined by the district judge upon remand.

17. *See* 8 Wright & Miller, Federal Practice and Procedure, p. 202.