The **DUPLAN CORPORATION,**
Appellee,

v.

**MOULINAGE et RETORDERIE de CHAVANOZ,** Appellant,

**Deering Milliken, Inc., et al., Defendants.**

No. 74–1221.

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1974.

Decided Oct. 18, 1974.

As Amended on Denial of Rehearing
Dec. 20, 1974.

Certiorari Granted March 24, 1975.
See 95 S.Ct. 1438.

Jay H. Topkis, New York City (Butler, Means, Evins & Browne, Spartanburg, S. C., and Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief), for appellant Chavanoz.

Fletcher C. Mann, Greenville, S. C. (Allan Trumbull, New York City, O. G. Calhoun, Jr., Greenville, S. C., John J. Barnhardt, III, Charlotte, N. C., Michael R. Abel, Greensboro, N. C., and Lawrence A. Hymo, Washington, D. C., on brief), for appellee Duplan Corp.

Before ADAMS,* FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This case presents the question whether an attorney's opinion work product material developed in prior terminated litigation may properly become the subject of discovery in connection with subsequent litigation. The issue involves the work product doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 (1947), and the scope of the protection afforded a lawyer's "mental impressions, conclusions, opinions, or legal theories" by Rule 26(b)(3) of the Federal Rules of Civil Procedure.[1]

---

* United States Court of Appeals for the Third Circuit; sitting by designation.

1. Rule 26(b)(3), F.R.C.P., reads as follows: "(3) *Trial Preparation: Materials.*—Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for

We hold that such opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions, or legal theories, is immune from discovery although the litigation in which it was developed has been terminated. Thus, for reasons which follow, we vacate the judgment of the district court and remand.

This patent-antitrust litigation presently consists of 37 cases which have been consolidated in the district court. Duplan Corporation (the throwsters) brought this suit charging Moulinage et Retourderie de Chavanoz (Chavanoz) and others with violating Sections 1 and 2 of the Sherman Act by denying the throwsters a free and open market for the purchase of unlicensed royalty-free false twist machines. Claiming patent misuse and inequitable conduct on the part of Chavanoz in dealing with the United States Patent Office, the throw-

sters also seek a declaratory judgment that 21 patents owned by Chavanoz are invalid, unenforceable, and not infringed.

In this context, the throwsters seek discovery of work product material developed by Chavanoz's attorneys and others relating to 1964 settlement agreements with Leesona Corporation,[2] and also relating to knowledge by Chavanoz of the state of the prior art involved in its patented process.[3]

In an earlier appeal, Duplan Corp. v. Moulinage et Retourderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973), we held, "upon the narrow question whether upon the termination of litigation the work product documents prepared incident thereto lose the qualified immunity extended to them under Rule 26(b)(3), Federal Rules of Civil Procedure," they do not automatically "become freely discoverable in subsequent and unrelated litigation."[4] Because we were not then

---

another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

2. In the early 1960's, Leesona Corporation claimed in a series of lawsuits that United States patents which it owned were infringed by the sale and operation of machines manufactured by a licensee of Chavanoz. These lawsuits were settled in 1964 by agreement between Leesona and Chavanoz.

3. "In particular, the throwsters request that documents should be produced dealing with the following matters:
   (a) *Patent Procurement.* What knowledge did Chavanoz possess about prior 'false twist' art at the time that it filed and prosecuted each patent application in the U. S. Patent Office? Did the French patent agent, Leo Soep, disclose to the U. S. Patent Office the pertinent facts he

knew about the prior art? Did the American patent attorneys Armitage and Mueller disclose to Chavanoz or to the U. S. Patent Office the pertinent facts they knew about the prior art? Were representations to the appropriate Patent Office officials accurate and candid?
. . .
   (b) *Patent Enforcement.* When the patent owner and/or the exclusive U. S. use-licensee filed infringement suits against the defaulting sublicensee throwsters, did they know or have reason to know that they were attempting to enforce invalid or inapplicable patents?
. . .
   (c) *Termination of Patent Litigation.* . . . what facts were known by the Chavanoz/Deering Milliken Research Corporation Group about the alleged invalidity and inapplicability of Chavanoz' patents when entering the 1964 agreements with the Leesona/Permatwist Group? [What evidence is there] . . . about the alleged invalidity and inapplicability of Leesona patents . . . [involved in the same] settlement agreements . . ."[?] Opinion of district court, pp. 4–5.

4. In so holding, we stated that "the legal profession and the interests of the public are better served by recognizing the qualified immunity of work product materials in a subsequent case as well as that in which they were prepared. . . ." 487 F.2d at

confronted with any claim relating to opinion work product, we dealt solely with the first sentence of Rule 26(b)(3) as applied to factual materials contained in an attorney's files.

Upon remand, the district court separately reviewed the documents in question, and in an order dated December 21, 1973 directed Chavanoz to produce 105 of them. Fifty-eight of these 105 documents have been produced; the remaining 47 were the subject of a motion for reconsideration by Chavanoz. As to these, Chavanoz claimed they were protected from discovery under Rule 26(b)(3) since they contained mental impressions, conclusions, opinions, and legal theories of attorneys and other representatives of Chavanoz prepared in anticipation of litigation or for trial. Nevertheless, on February 5, 1974, the district court ordered production of 22 of the 47 documents, finding that as to each of these the throwsters had demonstrated "substantial need" and "undue hardship." And although it acknowledged that Rule 26(b)(3) accords an absolute privilege during pending litigation to opinion work product materials prepared incident thereto, the court held that immunity ceases and the protection becomes only "qualified" once the litigation for which they were prepared terminates.

Certainly, the most controversial problem in the discovery area is the extent to which a party may require divulgence of facts, legal contentions, or trial tactics gathered or devised by his adversary in preparation for litigation.[5] The Supreme Court in Hickman v. Taylor,

329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), granted certain of these materials a qualified immunity. There the defendant's counsel had personally secured oral and written statements from witnesses in preparation for pending litigation. The plaintiff's counsel, in order to prepare for his own examination of these witnesses, sought copies of these signed written statements and detailed resumes of the oral statements. Characterizing these materials as the "work product" of the lawyer, the court held that without a showing of special need they were privileged from discovery.

In the federal courts from 1946 to 1970, the scope of *Hickman* and the work product doctrine was left to adjudication on a case by case basis. The decisions were often conflicting, and we have previously quoted one court's remark that Hickman v. Taylor had opened a Pandora's Box.[6] After numerous abortive attempts to reconcile the Rules with *Hickman,* the Advisory Committee on Civil Rules finally agreed upon a draft of Rule 26(b)(3) of the Federal Rules of Civil Procedure. As adopted by the Supreme Court in 1970, Rule 26(b)(3) contains these special provisions for trial preparation materials:

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney,

---

484. Then, in remanding to the district court, we stated:

"Our decision will not in any way frustrate the ends of justice. If the party seeking discovery can demonstrate the substantial need and undue hardship specified in the Rule and recognized in *Hickman,* the district court will order production. We think it appropriate and desirable that the district judge determine whether a party has made a showing sufficient to justify such an intrusion upon the privacy of an attorney's files." 487 F.2d at 485.

5. See, e. g., 4 Moore's Federal Practice ¶ 26.63–64 (1974); 2A Barron & Holtzoff, Federal Practice and Procedure § 652 (Wright ed. 1961); 8 Wright & Miller, Federal Practice and Procedure §§ 2021–27 (1970); Advisory Committee Note to the 1970 amendments of Rule 26(b)(3), 48 F. R.D. 499 (1970); Freund, Work Product, 45 F.R.D. 479 (1968); Note, Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1027 (1961).

6. Viront v. Wheeling & L. E. Ry. Co., 10 F. R.D. 45, 47 (D.C.Ohio 1950).

consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The first sentence grants a qualified immunity to "documents and tangible things . . . prepared in anticipation of litigation." The second sentence, however, provides "[i]n ordering discovery of *such materials* . . . the court *shall* protect against disclosure of the mental impressions. . . ." [Emphasis added] By their terms, the two sentences are complementary. Thus, it is apparent that the clear command of the second sentence to "protect against disclosure" applies to all the materials referred to in the first sentence. In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of the term "shall" as opposed to "may."

The district court, however, reasoned that what was a mental impression, opinion, conclusion, or legal theory, although absolutely protected during the pendency of a lawsuit, may change to an "operative fact" in a subsequent case once the earlier lawsuit is terminated.

And should this happen, upon a proper showing of substantial need and undue hardship, the district court held that it might in its discretion order the production of opinions and conclusions where the denial of such production would frustrate the demands of justice and result in suffocation of the truth.

The district court then devised an operative fact exception to the otherwise absolute immunity accorded opinion work product by Rule 26(b)(3).[7] In our view, this construction fails to comport with the policies underlying Hickman v. Taylor and Rule 26(b)(3).

It seems clear from the whole tenor of the *Hickman* opinion that the court was concerned with protecting the thought processes of lawyers and thus the very adversary system. As Justice Murphy stated in this now classic passage from *Hickman*:

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their

---

7. Because it was contended here that the 1964 settlement agreements between Leesona Corporation and the patent owner, Chavanoz, were in fact an antitrust conspiracy, the district court ordered production of certain opinion work product materials since "the mental impressions, opinions, conclusions, and legal theories of the attorney in the prior litigation are now operative facts as to the motive and intent of the parties at the time of the settlement." District court opinion at p. 16. As to the contentions that fraud was practiced on the U. S. Patent Office, the court ordered production of similar materials since "the mental impressions, opinions, conclusions, and legal theories of the attorneys prosecuting the patent applications for Chavanoz are now operative facts as to the motive and intent of the patent owner in its dealing with the Patent Office." District court opinion at p. 16.

clients' interests." 329 U.S. at 510–511, 67 S.Ct. at 393.

Should an advocate's thoughts, theories, opinions, and impressions, collected and developed during pending litigation, become discoverable in connection with later litigation because they are thought to be relevant, our adversary system would clearly suffer. Its foundation would be undermined. And in our view, the fears articulated by the *Hickman* court should apply here with equal force:

> "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." 329 U.S. at 511, 67 S.Ct. at 393.

In reaching our decision, we have considered with some care those cases in which courts have heretofore permitted discovery of lawyers' opinion work product.[8] See, e. g., United States v. Brown, 478 F.2d 1038 (7th Cir. 1973); Merrin Jewelry Co. v. St. Paul Fire and Marine Insurance Co., 49 F.R.D. 54 (S. D.N.Y.1970); Bourget v. Government Employees Ins. Co., 48 F.R.D. 29 (D. Conn.1969); O'Boyle v. Life Ins. Co. of North America, 299 F.Supp. 704 (W.D. Mo.1969); Kearney & Trecher Corp. v. Giddings & Lewis, Inc., 296 F.Supp. 979 (E.D.Wis.1069); Kirkland v. Morton Salt Co., 46 F.R.D. 28 (N.D.Ga.1968).

But none of these cases were decided under Rule 26(b)(3), and most of them may be additionally distinguished on their facts from the situation before us here. In such instances, in those cases, however, where the courts concerned treated attorneys' opinion work product as having only a qualified immunity which was not then honored, we believe the results were incompatible with Hickman v. Taylor and certainly the subsequent Rule 26(b)(3) which encompasses the protection termed "absolute" by Wright & Miller in 8 Federal Practice and Procedure, Civil, 1970, p. 193.

The throwsters rely upon Bird v. Penn Central Co., 61 F.R.D. 43 (E.D. Pa.1973), where the court ordered production of attorneys' memoranda containing mental impressions and legal conclusions relating to the sufficiency of a rescission claim upon the requisite showing. The *Bird* holding, however, merely applied the established rule that a party cannot affirmatively assert reliance upon an attorney's advice and then refuse to disclose such advice. See 8 Wigmore, Evidence § 2327 (McNaughten ed. 1961). And in International Tel. & Tel. Corp. v. United Tel. Co., 60 F.R.D. 177 (M.D.Fla.1973), which the throwsters also rely upon, the court noted that mental impressions and legal theories are "entitled to greater protection than other" trial preparation materials, but refused to order their disclosure despite a strong showing of substantial need and undue hardship, the materials being "almost absolutely unavailable otherwise."

We know that our adversary system of justice relies heavily on the attorneys for its very functioning. And in many

---

8. Not all of these cases can be distinguished, certainly. But we agree with Wright & Miller's observation that not every case decided prior to July, 1970 remains authoritative. "On some points the new rule resolves conflicts in the cases. Some decisions in the past may be improper applications of the doctrine announced in *Hickman* and now put into a rule. Thus, pre-1970 cases must be resorted to with discrimination and care. . . . " 8 Wright & Miller, Federal Practice and Procedure, Civil § 2023, at 193 (1970).

The following cases, decided since the 1970 amendments to Rule 26(b)(3), refused to allow discovery of opinion work product: Smedley v. Travelers Ins. Co., 53 F.R.D. 591 (D.N.H.1971) (rule referred to); Crocker v. United States, 51 F.R.D. 155 (N.D.Miss. 1970) (rule not referred to, but the court used the phrase "mental impressions, conclusions, and legal theories").

or even most cases, nothing less than the lawyer's very best is adequate. In every instance in which an attorney is consulted (even confining our remarks to the words of the Rule) "in anticipation of litigation" he must be free to give his candid, dispassionate opinion, and equally free to record it and his mental impressions and conclusions. No other rule is compatible with the interests of justice. The client seeking the opinion must be similarly uninhibited. So the attorney may not properly perform, and the client may not seek his due, if candid professional opinions prepared for a client in one case may be used against the client in subsequent litigation in the context sought here. The restriction on the attorney in giving advice, and the inhibition on the client in seeking it, is simply not compatible with our adversary system.

It is true that litigation is no longer a game of hide and seek, and also true that justice is to a large extent equated with truth. But if attorneys may not freely and privately express and record mental impressions, opinions, conclusions, and legal theories, in writing, and clients may not freely seek them, then there is justice for no one, and truth, instead of being more readily ascertainable, will become lost in the murky recesses of the memory in the minds of men, who, after all, are human and subject to the human frailty of rationalization. Cf. *Hickman*, 329 U.S. p. 511, 67 S.Ct. 385.

We thus adhere to and follow our holding in Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973) (that the immunity extended to work product may extend in time beyond the litigation at hand) and hold here that the immunity extended to attorneys' mental impressions, conclusions, opinions, or legal theories by the last sentence of F.R.C.P. 26(b)(3) does not expire once the litigation for which they are prepared has been concluded [9]

■ The documents immediately in question here are described by the parties as twenty-two in number. They say twenty-five documents were not ordered to be produced. Any questions with relation to documents not ordered to be produced are moot.[10] Although all of the documents containing opinion work product is not that of attorneys, all have been treated by the parties and the district court as being that of attorneys "or other representative[s] of a party." And it is clear the parties agree that the district court treated all of the documents here in question as not discoverable unless the opinion work product immunity ceases with the litigation for which prepared: ". . . this court may in its discretion order the production of opinions and conclusions. . . ." District court opinion, p. 19.

■ We are mindful that certain documents may contain both discoverable material and non-discoverable material. On remand, the district court may, providing the other prerequisites for discovery have been met, excise from such documents the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and order the balance of the documents to be produced. See Note of the Advisory Committee, etc., 48 F.R.D. 457, 502; 8 Federal Practice and Procedure, Civil, Wright and Miller (1970), pp. 231–2. The district court also may require

---

9. See 8 Federal Practice and Procedure, Civil, Wright & Miller (1970), p. 201.

10. Appendix C to the opinion of the district court lists 48 documents, 23 to be produced and 25 not to be produced. The discrepancy in numbers may be due to document Cat. 10, No. 85, which the court ordered produced *sua sponte*. In all events, only twenty-one documents are in dispute here, rather than twenty-two, for two of the twenty-three documents ordered to be produced were found by the district court not to come within the rule. This is pointed out in the throwsters' brief and not taken issue within the reply brief of Chavanoz. The twenty-one documents to which this opinion applies, which include the document taken up *sua sponte*, then, are the twenty-three documents ordered to be produced by Appendix C of the opinion of the district court less the two held not to come within the rule, numbers Cat. 10, No. 397, and Cat. 10, No. 574.

Chavanoz to abstract such documents for turning over to the throwsters, or may itself abstract the documents, in either case taking care to protect against disclosure of mental impressions, conclusions, opinion, or legal theories as directed by the last sentence of F.R.C.P. 26(b)(3).

Reversed and remanded.