**In re STANDARD FINANCIAL MANAGEMENT CORP., d/b/a New England Rare Coin Galleries, Debtor.**

**Bankruptcy No. 87-10219-HL.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 10, 1987.

William R. Baldiga, Thomas Bean, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for sp. counsel, Joseph Ryan.

Alan M. Spiro, James C. Gross, Friedman & Atherton, Boston, Mass., for F & A.

## MEMORANDUM RE ATTORNEY'S WORK PRODUCT

HAROLD LAVIEN, Bankruptcy Judge.

Special counsel, by the very nature of his appointment and such discovery as he has thus far been able to effect,[1] has required a thorough examination of the debtor's potentially diverted assets. For what may well be good reason, the present sole stockholder and major domo of the debtor, along with his former associate, decline to cooperate, resisting all examination and most production of documents by asserting the Fifth Amendment and attorney/client privilege. Thus, compelling Special Counsel, in order to carry out his duty of administering the bankruptcy estate, to turn to secondary sources of information or potential leads to information. One such potential source is Friedman & Atherton, ("F & A") one of debtor's former counsel.

F & A has produced some files, based on the waiver by the debtor (by Special Counsel) of its attorney/client privilege, and, further, has provided a list of limited descriptive detail of the withheld documents, based on various privileges. The present dispute is procedurally a request for reconsideration of an order to further amplify the lists so that Special Counsel can intelligently determine the appropriateness of any challenge. Actually, the dispute has become limited and very specific. It concerns several folders of handwritten notes or drafts made by attorneys, most of whom are no longer with the firm. Although the debtor waived any privileges in regard to them, F & A claims an attorneys' work product privilege which it maintains is broader than the attorney/client privilege, in and that it is personal to the attorney, *citing, Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *United States v. Nobles,* 422 U.S. 225, 238, n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d

---

1. This includes, but is by no means limited to the discovery of cash payments received by an employee/principal of the debtor from a customer of the debtor, mailed and addressed to the employee at his home. See Memorandum of July 15, 1987.

141 (1975); *Upjohn Co. v. United States,* 449 U.S. 383, 399–402, 101 S.Ct. 677, 687–89, 66 L.Ed.2d 584 (1981); *In re Special September Grand 1978 Jury,* 640 F.2d 49, 62 (7th Cir.1980); *Donovon v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill.1981); *First Wisconsin Mortgage Trust v. First Wisconsin Corporation,* 86 F.R.D. 160, 167 (E.D.Wisc.1980); *Ohio–Sealy Mattress Manufacturing Company v. Sealy, Inc.,* 90 F.R.D. 45, 49 (N.D.Ill.1981).

Special Counsel says that these cases are all inapposite because, while they may in fact use some general language, they all, starting with the seminal *Hickman* case, involve and describe an adversarial context and, in fact, cite language in these cases that "the work product privilege is based on the existence of an adversarial relationship ..." *In re International Systems & Control Corp.,* 693 F.2d 1235, 1239 (5th Cir.1982). Special Counsel argues, and the Court tends to agree, that the very *Hickman* case, 329 U.S. at 510, 67 S.Ct. at 393, states that the work product doctrine's rationale and design was to protect the "rightful interests of the client." Or, further, as noted on page 505, 67 S.Ct. on page 391:

> The basic question at stake is whether any of these devices may be used to inquire into the material collected by an adverse party's counsel in the course of preparation for possible litigation.

This litigative posture contrasts with the precise factual situation in the present proceeding where there is no adversarial context and, presumably, never was. It appears questionable whether the notes were made in contemplation of litigation, they are not now intended to be used for any purpose other than as to provide some insight into the debtor's business and practices and as leads for further investigation in attempting to maximize the estate's assets for the benefit of its creditors and, therefore, much like a doctor's notes desired by the doctor's patient to further his treatment. This work was done for the debtor, paid for by the debtor, and now needed by Special Counsel as trial markers in his administration of the estate.

■ The exact issue before us is somewhat unique and limited. Namely, can an attorney assert against its own client in a non-adversarial context the so-called work product privilege and deny the client the discovery and analysis accumulated while working for and being paid for by the client. As stated in one of the very few cases that deals with this limited aspect of the problem:

> The district court's view that *Spivey* was not entitled to access to the requested materials because they belonged to Schloth is untenable. *Spivey,* Schloth's former client, sought materials generated during and pertinent to the representation. Absent any assertion by Schloth of some particularized and superior interest in the materials, *Spivey* was entitled to all portions of Schloth's file relevant to the proceedings in the district court.

*Spivey v. Zant,* 683 F.2d 881 (5th Cir 1982); (*see also* 4 Moore's Federal Practice ¶ 26.-64[2] (2nd Ed.1986)).

In any event, Special Counsel has demonstrated good cause, in light of the vigorous opposition from the former principals of the debtor and the present lack of any other knowledgeable witnesses. Unless Special Counsel is able to acquire some inside information, it will be impossible to administer this estate.

There is very little authority directly on point as most of the cases factually assume an adversarial posture in which the best interest of the client, and, incidentally, the attorney, are served by recognizing the privilege and yet, even here, there are no consistent case authorities. *See, for example, Duplan Corporation v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973), citing lines of conflicting cases as well as citing the English view in favor of the privilege but, again, the rationale deals with the solicitor's need in preparing for litigation and bases the privilege on the unfairness of "asking for the key to the labor which the solicitor has bestowed in obtaining them", Lord Justice Bowen in *Lyell v. Kennedy,* 27 Ch.Div. 1 (CA 1884). But, isn't that exactly the point? To provide the key paid for by the client in an

adversarial posture may be one thing, but providing the key in a non-adversarial context to one who hired the locksmith, may very well be another. The immediate objective in consulting the locksmith may be to gain entrance but, certainly, the ultimate objective is hopefully to avoid a recurrence of the problem by obtaining the key.

The conflict faced by the Court, particularly in the adversarial status, is well stated by Justice Murphy:

> Examination into a person's files and records, including those resulting from the professional activities of an attorney, must be judged with care. It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work. At the same time, public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task.

*Hickman v. Taylor*, 329 U.S. 495, 497, 67 S.Ct. 385, 387, 91 L.Ed. 451 (1946).

Hickman recognizes, as do most of the cases, that "the basic question at stake is whether any of those devices may be used to inquire into material collected by an *adverse party's* counsel in the course of preparation for possible *litigation.*" page 505, 67 S.Ct. page 391. The opinion goes on to state, at page 511, 67 S.Ct. at page 393:

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence *to promote justice and to protect their clients' interests* ... Were such materials *open to opposing counsel* on mere demand, much of what is now put down in writing would remain unwritten. [Emphasis added]

This whole matter of the so-called attorney's work product privilege had its origins in an adversary context and the intention that it be limited to an adversary context and litigation is spelled out in great detail, in *Developments in the Law–Discovery,* 74 Harvard Law Review, 942–1069, 1027–1046 (1961). *Note,* also, that Federal Rule of Civil Procedure 26(b)(3) only concerns itself with an adversarial confrontation.

In the matter in hand, it is not clear that all or any of the notes were made in preparation for any ongoing litigation against any present adverse party but are rather simply attorney's notes on the debtor/client's legal affairs. To protect counsel from his own client trying to recapture background detail is a perversion of the privilege unsupported by text writers or cases and in no way comporting with the *Hickman* rationale for such a privilege. *Moore,* citing *Spivey v. Zant,* 683 F.2d 881 (5th Cir.1982) states it quite tersely, "Where a party seeks work product material from his own attorney or agent, however, the doctrine is inapplicable." 4 Moore's Federal Practice, ¶ 26.64[2] (2nd Ed.1986 p. 26–361).

Since F & A acknowledge the futility of further describing the withheld notes, and since the question of work product privilege has been fully briefed and argued, the Court has considered the merits of the alleged privilege, and on the information before it, does not find a *Hickman* style work product privilege entitled to non-disclosure. There is no allegation of these notes being prepared in preparation for litigation, there is no adversary proceeding for which they are required but, rather, for Special Counsel's need to develop background and leads to aid in advancing the administration of the bankruptcy estate. No case or authority has been cited and we have found none standing for the proposition that there is a work product privilege allowed an attorney, from a request by his former client, for work produced in a non-adversarial context.

█ Further, an in camera inspection by the Court to determine if some of the documents could actually be found to be work product in the *Hickman* sense is unnecessary. The material requested in this case does not fall within the very limited judicial

definition of the work product protection. Even if it might be so argued, Special Counsel has shown a need that on balance with the privilege asserted by F & A in this matter, should entitle him to production of the notes.[2]

Most compelling in the Court's view is that the obvious and direct source of information, that of the principals in this closely run operation, has been totally shut off. The creditors are left with serious unanswered questions as to the estate's assets, hindering to the point of futility the proper administration of this estate. The principals of the debtor have, at least from their point of view, quite properly refused to cooperate by taking the Fifth Amendment, and vigorously resisting all discovery by asserting all available privileges including, but not limited to, the attorney/client privilege and work product privilege. In this instance, Special Counsel has shown a need to gather the information and an inability to obtain it from other sources. The information is necessary as it concerns potential assets of the debtor that can be acquired in no presently forseeable other way.

Friedman & Atherton is ordered to turn over, forthwith, the files in question.

---

2. The privilege where upheld is generally recognized as conditional, and supporting opinions typically contain such language as:

  Our decision will not in any way frustrate the ends of justice. If the party seeking discovery can demonstrate the substantial need and undue hardship specified in the Rule and recognized in *Hickman,* the district court will order production.
*Duplan Corporation v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 485 (4th Cir.1973).