Furnari, J.
This is an action for breach of contract to recover amounts allegedly due under a motor vehicle lease after default by the defendant-lessee and repossession and sale of the vehicle by the lessor’s assignee.
The sole issue presented by this appeal is whether the automobile lease in question constituted a “retail installment contract” so as to have entitled the defendant-lessee to the statutory protection of the notice, repossession and redemption requirements of the Massachusetts Retail Installment Sales of Motor Vehicles Act, G.L.C. 255B, §1 et. seq.
The reported evidence indicates that on August 15, 1989, the defendant executed a “Closed End Lease and Disclosure Statement” (“the Lease”) -with Charles River Saab[2] for a four year lease of a 1989 Saab 900S sedan at a monthly rental rate of $336.04. The report states that the fair market value of the leased vehicle at the time of lease execution was $19,274.90.[3]
The written agreement recited that it was a consumer lease of a vehicle for personal or household purposes, and identified the parties as lessor and lessee. The Lease specifically obligated the defendant-lessee to maintain fire, theft, collision, *168 and liability insurance coverage; to pay all expenses for the maintenance and repair of the vehicle; to bear the risk of loss or damage to the vehicle; and to indemnify the lessor. The Lease expressly disclaimed any express or implied warranties by the lessor; prohibited the use of the vehicle for certain purposes; and imposed penalties, inter alia, for excessive annual mileage and unreasonable wear and tear. The defendant was afforded a right of early termination upon written notice to the plaintiff at any time after making twelve monthly lease payments. The lessee’s liability upon early termination consisted of taxes, a disposition charge and other fees, any monthly arrearages and the difference between the realized value of the vehicle upon resale and the “Initial Lease Balance,” less portions of monthly payments credited to depreciation.
The Lease also included an option, upon the payment of a $150.00 purchase fee plus other fees and taxes, to purchase the vehicle either (1) upon early termination at a price calculated in accordance with a specified formula, or (2) upon the expiration of the lease at the “Estimated Wholesale Value” price of $8,435.60. In connection with this option, the Lease provided:
I [the defendant-lessee] ACKNOWLEDGE THAT THIS IS A TRUE LEASE, THAT I HAVE NO EQUITY OR OTHER OWNERSHIP RIGHTS IN THE LEASED VEHICLE OR ITS REPLACEMENT PARTS AND THAT I CAN ONLY ACQUIRE THE LEASED VEHICLE IF I EXERCISE THE PURCHASE OPTION.
Paragraph 9 of the Lease also expressly required the return of the vehicle to the lessor in the event the defendant did not exercise his option to purchase.
The defendant defaulted within the first year by making late payments. On July 20, 1990, the plaintiff entered onto properly rented by the defendant and repossessed the vehicle -without the defendant’s consent and with no prior notice to him. Paragraph 15 of the Lease governing default authorized the lessor to take possession of the leased vehicle without any notice to the defendant.
The defendant testified that on Monday, July 23,1990, the next business day following the repossession, he contacted the plaintiff and offered to bring his account up to date and to redeem the vehicle, but that the plaintiff refused this offer. The plaintiff denied at trial any record of such a call from the defendant. The Lease did not include any right of redemption.
The plaintiff sold the vehicle at a private sale for $12,000.00, and thereafter instituted this suit for damages for the defendant’s breach of the lease.
At the close of the evidence at trial, the defendant submitted requests for rulings that the Lease was a retail installment contract as defined by G.L.c. 255B, §1; that the plaintiff had violated the notice, repossession and redemption requirements of G.L.c. 255B, §§9, 20A and 20B; and that the plaintiff was thus barred by G.L.c. 255B, §22 from recovering any finance, delinquency or collection charges in this action. The trial court ruled that “Chapter 255B of the G.L. does not apply to the facts of this case.”
Judgment was entered for the plaintiff in the amount of $8,089.72, plus interest and costs, and the defendant thereafter requested this appeal.
1. General Laws c. 255B is a consumer protection statute which affords to purchasers of motor vehicles under retail installment sales contracts certain rights and remedies, including a defaulting buyer’s right to notice, a fair hearing and to the redemption of the motor vehicle after repossession. A “retail installment contract” covered by G.L.c. 255B is defined in Section 1 as including:
a contract for the bailment or leasing of a motor vehicle by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed *169 that the bailee or lessee is bound to become, or has the option of becoming, the owner of the motor vehicle upon full compliance with the terms of the contract.
Although the indicia of a retail installment contract or security agreement can be found in many of the provisions of the motor vehicle lease at issue in this case, the essential financial components of the parties’ transaction indicate that the Lease did not constitute a retail installment contract cognizable under G.L.c. 255B, §1.
The defendant-lessee contracted herein “to pay as compensation for its use” of the vehicle during the forty-eight month rental term a total lease payment sum of $16,129.92. The defendant contends that such amount represented a sum “substantially equivalent” to the $19,274.90 fair market value of the vehicle at the time of lease execution in satisfaction of the first prong of the G.L.c. 255B, §1 definition of a retail installment sales contract.[4] The ordinary and usual meaning of the term “equivalent,” however, is that which is “equal in value ... identical.” Black’s Law Dictionary (6th Ed.). The statutory phrase “substantially equivalent” is thus synonymous with “substantially the same,” signifying in G.L.c. 255B, §1 a rental payment figure which is not substantively or materially different from the dollar value of the vehicle. See Haran v. Board of Regis, in Medicine, 398 Mass. 571, 574-575 (1986). As the total lease payments were sixteen (16%) percent or $3,144.98 less than the fair market value of the vehicle, we conclude that the Lease in this case did not require the defendant to pay as rental compensation a sum “substantially equivalent” to the value of the vehicle. Compare Carlo Bianchi & Co. v. Builders’ Equip. & Supp. Co., 347 Mass. 636, 644 (1964) (where monthly rental charge under a 30 month lease was determined by dividing total purchase price of equipment into 30 equal parts, agreement was conditional sale contract rather than lease); In Re Estate of Gonzalez, 219 Cal. App. 3d 1598 (1990) (total rental payments amounting to only 76% of vehicle value did not constitute sum “substantially equivalent” to value). This conclusion is substantiated by the express exclusion in the lease of any equity interest of the lessee’s, an interest which would have arisen if the rental payments met or exceeded the retail purchase price. Credit Car Leasing Corp. v. DeCresenzo, 525 N.Y.S.2d 492, 495 (N.Y.C.Civ.Ct. 1988).
2. Even assuming arguendo that lease payments which amounted to eighty-three (83%) percent of the fair market value of the vehicle constituted an amount “substantially equivalent” to such value, it remains clear that the Lease at issue herein did not satisfy the second part of the G.L.c. 255B, §1 definition of a retail installment contract which pertains to ownership of the motor vehicle.
The primary characteristics which distinguish a conditional sale contract or security agreement from a true lease are the “lessee’s” equitable interest in the property and his right or obligation to assume ownership at the expiration of the contract term. Matter of Tillery, 571 F.2d 1361, 1365 (5th Cir.1978),McGee Steel Co. v. State MacDonald Industries, 723 P. 2d 611, 615 (Alaska 1986). Where, conversely, the lessee is obligated to return the equipment or vehicle at the end of the rental period and the agreement does not provide a mechanism for the transfer of ownership, the agreement will generally be considered a true lease. In Re Mohawk Indus., Inc., 49 B.R. 376, 379 (Bkrtcy.D.Mass. 1985); Tolaram Fibers, Inc. v. Tandy *170 Corp., 375 S.E.2d 673, 675 (N.C.App. 1989); Chase Third Century Leas. Co. v. Williams, 782 S.W.2d 408, 413 (Mo.App. 1989); Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147, 155 (Fla.App. 1988). In the instant case, the defendant-lessee enjoyed no equitable interest in the vehicle, was required to return it at the expiration of the Lease and would not have been “bound to become” or have had the “option of becoming” the owner of the vehicle simply upon “full compliance with the terms of the lease” as required by G.L.c. 255B, §1.
The Lease instead provided an option to purchase upon not only the defendant’s satisfaction of all lease terms, but also upon the additional condition of payment of a purchase fee, taxes and an $8,435.60 estimated wholesale value option price. Although the inclusion of a purchase option is given substantial weight in determining that a contract is a security sale agreement rather than a lease, In Re Mariner Communications, Inc., 76 B.R. 242, 245 (Bkrtcy.D.Mass. 1987), purchase option clauses are now so common an aspect of true leases as well as sales contracts that their inclusion is not considered dispositive.Matter of Tillery, supra at 1366. An option to purchase at no additional cost or for a nominal price is, however, generally conclusive of the nature of a contract as one for an installment sale rather than a lease.[5] Carlo Bianchi & Co. v. Builders’ Equip. & Supplies Co., supra at 644; Equilease Corp. v. D’Annolfo, 6 Mass. App. Ct. 919 (1978); State Ex Rel. v. Tele-Communications, 601 N.E.2d 234, 240 (Ohio Ct.Cl. 1990); Carrier Leas. Corp. v. Ready-Mix Cos., 372 So.2d 601, 605 (La.App. 1979). This prevailing view is reflected in G.L.c. 106, s. 1-201(37) of the Uniform Commercial Code which provides:
Whether a lease ... is intended as a security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security [emphasis supplied].
The litmus test then for determining whether a contract with a purchase option clause is in substance a true lease or a security agreement incident to a sale is a comparison of the option price with the value of the vehicle or equipment at the time the option is to be exercised. In Re Access Equip., Inc., 62 B.R. 642, 646 (Bkrtcy.D.Mass. 1986); Woods v. General Elec. Credit Auto Lease, Inc., 369 S.E.2d 334, 336 (Ga.App.1988). Where the option is to purchase at the market value of the vehicle at the time of contract expiration, and a more-than-nominal option price establishes that the lessor retained a significant reversionary interest in the leased goods, the contract will be deemed a true lease rather than a sales agreement. See Carlson v. Giachetti, 35 Mass. App. Ct. 57, 63-64 (1993); Alpiser v. Eagle Pontiac-GMC-Isuzu, Inc., 389 S.E.2d 293, 295(N.C.App. 1990).
In the instant case, the $8,435.60 purchase option price was agreed to by the parties as the estimated wholesale value of the leased Saab at the expiration of the lease term. The option price was thus equivalent to one hundred (100%) percent of *171 the vehicle’s estimated wholesale value.[6] The Lease purchase option price clearly exceeded, therefore, what could reasonably be considered a “nominal sum.” See In Re Access Equip. Inc., supra at 646 (accepted rule of thumb consistent with “economic realities test” for true lease is option price which exceeds 25% of total list price). See also, In Re Standard Financial Mgm. Corp., 79 B.R. 97, 104 (Bkrtcy.D.Mass. 1987)(25% or less is nominal). Compare, e.g., Pactel Finance v. D.C. Marine Serv. Corp., 518 N.Y.S. 2d 317 (Dist.Ct. 1987) (10% of anticipated purchase price is nominal sum).
We conclude, therefore, that the automobile lease in this case did not constitute a retail installment contract cognizable under G.Lc. 255B, §1. Our holding is, however, based exclusively on the express terms of the statute, and in no way suggests that fundamental equitable considerations would not warrant the extension to a lessee in circumstances similar to the defendant’s herein of the same consumer protections which are now afforded to a motor vehicle purchaser under a retail installment sales contract. Whether the public policy underlying G.L.c. 255B warrants an extension of similar rights and remedies to an automobile lessee is a matter for the Legislature’s consideration.
There being no error, the report is dismissed.

Charles River Saab assigned its rights under the lease to Saab-Scania Financial Services Corp., which in turn assigned the lease to Marine Midland Bank, NA, the plaintiff in this action.

The Report indicates that the $19,274.90 fair market value figure was derived from paragraph 3 of the Lease. The copy of the Lease appended to the Report submitted to this Division does not, however, include such figure.

The plaintiff contends that the true G.L.c. 255B, §1 “value” of the leased Saab over its “useful life” was $24,565.52, calculated as the sum of the $16,129.92 total lease payments plus the car’s $8,435.60 residual value. See Keeling v. Ford Motor Credit Co., 550 A.2d 932, 936 (Md. 1988). Using such figure, the total rental payments under the Lease would have amounted to only sixty-six (66%) percent of the vehicle’s value.

Section 1 of G.L.c. 255B does not include any reference to additional or nominal cost in the second part of its definition of a retail installment contract. That the bailee or lessee would have the option of becoming the owner of the vehicle for little or no additional consideration is, however, implicit in view of the first prong of the statutory definition which requires that the bailee or lessee pay as compensation a sum substantially equivalent to or in excess of the vehicle’s value.

Even if the option purchase price were to be compared to the only other vehicle “value” figures in the record, the option price could not be considered nominal. The option price constitutes forty-four (44%) percent of the fair market value of the vehicle at the time of lease execution, and thirty-four (34%) percent of the value of the vehicle over its useful life. See note 4, supra.