372 So.2d 601 (1979)
CARRIER LEASING CORPORATION
v.
READY-MIX COMPANIES, INC.
CARRIER LEASING CORPORATION
v.
ST. CHARLES READY MIX, INC.
No. 9060.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1979.
Rehearings Denied July 12, 1979.
*602 Francipane, Regan & St. Pee, Richard T. Regan, Metairie, Kenneth A. Beoubay, Gretna, for relator.
Scariano & McCranie, George Scariano, Metairie, Chaffe, McCall, Phillips, Toler & Sarpy, Peter A. Feringa, Jr., New Orleans, for respondent.
Before LEMMON, GULOTTA and BEER, JJ.
LEMMON, Judge.
This matter is before the court on a writ of review, issued in response to defendants' application for supervisory writs under C.C.P. art. 2201 in order to review a judgment refusing to dissolve a writ of sequestration.
The litigation began when plaintiff filed two separate actions which asserted a lessor's *603 privilege on certain concrete trucks allegedly leased to defendants under several contracts of various dates. The petitions, which alleged defendants were in default on the contracts, demanded immediate seizure of the trucks and judgment, after due proceedings, awarding the amount due and recognizing the privilege.
Immediately after seizure defendants obtained release of some of the trucks by furnishing a sequestration bond and then filed a motion to dissolve the writ and to recover damages for wrongful issuance. The motion was based on the assertion that the sequestration had been illegally obtained because the contracts were not leases, but were actually conditional sales, so that plaintiff had no lessor's privilege to assert.
After a hearing the trial court rendered judgment dismissing the motion to dissolve and denying damages. Defendants immediately applied for a new trial, which was granted on reargument only. Almost a year later (during which period there were ongoing settlement negotiations) the court rendered an order dismissing the application for new trial.
Defendants then applied to this court for supervisory writs, which were granted.

I
Plaintiff first contends that when defendants failed to appeal, the judgment of the trial court became definitive and acquired the authority of the thing adjudged, so that this court now has no jurisdictional power and authority to reverse or modify that judgment.
The original judgment of the trial court, which dismissed the motion to dissolve the sequestration, was set aside and vacated when a new trial was granted. C.C.P. art. 1971; Larose v. Naquin, 145 La. 1025, 83 So. 230 (1919); La Frenz v. La Baw, 21 So.2d 71 (La.App. 2nd Cir. 1945). Granting of a new trial, of course, contemplates rendition of a new judgment.[1]
In this case, however, no new judgment was ever rendered, nor was the original judgment ever reinstated.[2] Accordingly, there is no judgment in effect, from which an appeal could have been taken, and we do not reach the issue of whether it was necessary to appeal from a judgment refusing to dissolve a writ of sequestration in order to keep the judgment from acquiring the authority of the thing adjudged.[3]

II
We granted supervisory writs because there appeared to be palpable error, at least as to one contract, in the trial court's ruling that the contracts were not conditional sales.[4] After review of the record we have *604 concluded all four of the contracts still in dispute constituted conditional sales. A detailed factual analysis is appropriate.
Plaintiff contracted with St. Charles Ready Mix, Inc. (SCRM) in two contracts involving six trucks and with Ready Mix Companies, Inc. (RMC) in seven contracts involving 16 trucks. A separate suit was filed against each defendant, and after consolidation Davis Industries, Inc. (DI) intervened, asserting that it had purchased the trucks and owned them at the time of seizure.[5]
At trial defendants attempted to show there were two types of contracts. The first group, consisting of five RMC contracts (12 trucks) and called the F & M Bank contracts, were conceded by defendants to be leases, so that plaintiff was undisputedly entitled to possession of these 12 trucks. The second group, consisting of two RMC contracts (four trucks) and two SCRM contracts (six trucks) and called the CIT contracts, were asserted to be conditional sales. These contracts were executed on printed form lease agreements, but defendants contended that at the time of execution plaintiff simultaneously agreed to transfer title upon completion of all lease payments for the additional consideration of only $1.00. A considerable amount of the extensive evidence was directed at this factual contention.
Edson Davis, president of both SCRM and RMC, testified: When he bought the ten trucks under the four CIT contracts, the seller (a corporation of which plaintiff is a subsidiary) agreed title would be transferred after the last contract payment, and plaintiff handled the financing. He put up a cash down payment of $65,000.00 for the four contracts. (There was no down payment for the 12 trucks leased under the F & M Bank contracts in 1972.) When he fell behind on the payments toward the end of the term of the four-year contracts, he sought to pay off the small balances due on the ten trucks by mortgaging them with another lender on the basis of the substantial equity, but he needed to obtain title to do so. Marvin Reeves, plaintiff's collection manager, stated his belief that these contracts were not subject to a purchase option, but after checking confirmed that defendant had been granted an option to purchase. (Davis' wife verified the confirmation in her presence.) However, Stephen Zeligson, plaintiff's president, refused to surrender titles to the ten trucks, stating the option had been lost because defendants had not complied with the terms of the agreement. He (Davis) then refused to make further payments, and these suits followed.
Reeves (the collection manager) recalled the conversations with Davis and admitted he had confirmed to Davis that the four contracts were subject to purchase options "as best as I could determine", (the president) testified that recollection of the original transaction, but had found one written purchase option (covering one contract and four trucks) in his files. He pointed out, however, that the purchase options, if granted, were contingent upon the total amount having been paid in accordance with the contract terms and the customer's having "complied with each and every provision of the lease". He further stated that while his company normally only leased equipment, it would enter into a "time purchase agreement" if the customer specifically requested this, but he could not tell if there was such a request in this case without checking the files. On cross examination he explained that the down payment (called advance rental payment in the printed form) was often required *605 in order to make a transaction financially feasible when investigation showed the customer was a credit risk. He could not explain why no advance rental payment was required in the F & M Bank contracts, but suggested that the customer's credit rating may have improved between 1971 and 1972.
The evidence compels the conclusion that at the time the CIT contracts were struck, the parties intended SCRM and RMC would have an option to purchase the trucks for a nominal price when the contract amount was paid. This intention was indisputably shown by the written agreement supplemental to one contract. No one specifically denied Davis' testimony as to the other three contracts, and indeed plaintiff's president's testimony indicated he refused to deliver title upon payment primarily because defendants had failed to comply with the contract terms. Furthermore, the fact of the required down payment (not required in the admitted leases) indicates that all of the CIT contracts were the same and that these contracts were different from the F & M Bank contracts, which concededly had no option to purchase.

III
There are many factors to be considered in determining whether a contract is a valid lease-purchase agreement or a prohibited sale with reservation of title (common law conditional sale). Lee Constr. Co. v. L. M. Ray Constr. Corp., 219 La. 246, 52 So.2d 841 (1951). In the present case the fact that the total amount of lease payments was determined by reference to the value of the trucks, plus interest, is persuasive, but is not determinative of the issue. The fact that substantial down payments were required for these contracts, while none were required for those contracts conceded to be leases, is similarly persuasive. However, the determinative fact is that from the inception of the transaction defendants were bound to pay the full amount of payments (constituting the value of the trucks, plus financing charges) and then, without further consideration, were granted the "option" to purchase the trucks for only $1.00. Such an "option" indicates that the parties always intended a sale and that the purpose of this form of contract was to reserve title in the seller until payment of the purchase price. Such an agreement is a disguised conditional sale and will be regarded as a sale from the inception of the transaction. Pastorek v. Lanier Systems Co., 249 So.2d 224 (La.App. 4th Cir. 1971).
Finally, since each transaction must be regarded as a sale from its inception, plaintiff misses the point when it argues that breach of the contracts by defendants' failure to make payments timely rendered the option inoperative. The option, agreed upon contemporaneously with the execution of the lease, makes the entire transaction a sale from the beginning, and breach of the contract terms does not change the transaction into one of lease, but rather merely gives the seller a cause of action to sue on the overdue debt arising from the sale.
Since there was no lease, there was no lessor's privilege, and the writ of sequestration based on a lessor's privilege must be dissolved. Because the sequestration was issued as a pre-judgment seizure in a suit on defendants' indebtedness, the matter will be remanded for trial of the principal demand for a money judgment in the amount of the indebtedness.[6]

IV
The trial court found that plaintiff had failed to prove any damages.[7]
*606 Of the ten trucks at issue one was never seized, six were released on the afternoon of the seizure, and two more were released two days later. The evidence showed that the number of yards of concrete delivered and the number of trucks used for delivery was not significantly different the two days following seizure than on any average day in that general period of time. Furthermore, there was some suggestion that the orders scheduled for delivery on the day of seizure were or could have been rescheduled shortly thereafter.
While there was considerable evidence from which a contrary conclusion could have been drawn, we cannot say a conclusion that defendants did not sustain any significant damages from the seizure was manifestly erroneous on this record.
It is therefore ordered that the trial court enter judgment granting the motion to dissolve the writ of sequestration based on a lessor's privilege and denying the demand for damages. The matter is remanded for further proceedings on the principal demand. Costs will be assessed upon disposition of the entire matter.
ORDER ISSUED, REMANDED.
NOTES
[1] The granting of a new trial, even when limited to reargument, sets aside the original judgment. The fact that the new trial was granted for reargument only simply meant that no additional evidence could be adduced. C.C.P. art. 1978.
[2] The judgment rendered subsequent to the granting of a new trial stated the court's conclusion that the original judgment "should remain undisturbed" (although it had already been upset by the granting of a new trial), but the decree simply dismissed the motion for new trial.
[3] It appears to be settled that a judgment granting or denying damages for wrongful seizure is a final judgment which acquires the authority of the thing adjudged unless timely appealed. See Talley v. Bradley, 177 So.2d 624 (La.App. 3rd Cir. 1965), awarding damages; Smith v. Utility & Maintenance Contractors of America, Inc., 301 So.2d 906 (La.App. 2nd Cir. 1974), denying damages.

Whether a judgment refusing to dissolve a writ of sequestration on the ground that the asserted privilege did not exist is conclusive of the validity of the privilege is an interesting issue which would have been presented if a valid judgment refusing the dissolution had been rendered after the new trial. See Stahlman Lumber Co.Div. of Staco Mfg. Co. v. Ferrill, 320 So.2d 331 (La.App. 3rd Cir. 1975), which reaffirmed the jurisprudence that a judgment refusing a motion to dissolve a seizure, when there is no demand for damages, is an interlocutory non-appealable judgment, while conceding that a judgment refusing a demand for damages in connection with such a motion is a final judgment on the right to damages.
[4] Plaintiff argues that supervisory jurisdiction is properly exercised only when the relator shows irreparable injury.

This court has plenary power to exercise supervisory jurisdiction at any time. Prior to this application for supervisory writs, this court had exercised supervisory jurisdiction and had issued a judgment in these consolidated cases, reversing an increase in the amount of the bond, and a rehearing application was pending from that judgment. When the present application was filed, it became apparent that the visceral issue in both writs (and in the entire litigation) is whether the contracts were leases or conditional sales. Accordingly, this court granted the writ in order to decide that issue, which will be determinative of the course of the litigation.
[5] For purposes of this discussion the various corporations will be treated without differentiation and will be referred to as defendants.
[6] We would prefer to terminate the litigation by rendering a money judgment, leaving the parties in a position to simply pay the amount due or to execute on the money judgment. However, the sequestration and the motion to dissolve were ancillary to the principal demand for a money judgment, and while there appears to be no substantial dispute on the principal demand, issue has never been joined. We therefore reluctantly remand the matter, having decided the visceral issue of whether the transaction was one of sale or lease.
[7] Generally, supervisory jurisdiction would not be exercised solely to review the award or denial of damages for wrongful seizure, since there is ordinarily an adequate remedy by appeal. However, since supervisory writs were granted for other purposes, since this judgment as a practical matter settles the litigation (the amount of indebtedness being virtually conceded), and since the record is complete on the issue of damages, judicial efficiency dictates that this issue also be adjudicated.