456 So.2d 1225 (1984)
Alejandro HOYAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-2389.
District Court of Appeal of Florida, Third District.
September 18, 1984.
Rehearing Denied October 26, 1984.
*1226 Jerrell A. Breslin, Miami, and Kurt Marmar, Coral Gables, for appellant.
Jim Smith, Atty. Gen., and Renee Ruska, Asst. Atty. Gen., for appellee.
Before HENDRY, BARKDULL and BASKIN, JJ.
HENDRY, Judge.
Appellant, Alejandro Hoyas, was charged by indictment in June, 1981 with one count of first degree murder and one count of armed robbery, based upon an incident which occurred in late March, 1980. Appellant pled not guilty. He was tried before a jury, which found him guilty of first degree (felony) murder and robbery with a firearm. Judgment and sentence of imprisonment were entered and appellant took this appeal following denial of his post-trial motions.
On appeal, appellant raises several points, only one of which we find merits discussion. It is contended that where appellant's former attorney was compelled to testify as a state witness to rebut and impeach appellant's trial testimony, appellant was denied a fair trial, as guaranteed under the fifth and fourteenth amendments to the United States Constitution and section 90.502, Florida Statutes (1981), governing the attorney-client privilege. We find that this contention is not substantiated by the particular facts of this case, and affirm. The facts relevant to this issue are as follows.
Prior to trial appellant's former attorney sought a protective order quashing a trial subpoena. The subpoena required his testimony, as a state witness, regarding his attempt to negotiate a surrender of appellant to law enforcement authorities, allegedly at appellant's request, and appellant's subsequent flight to avoid prosecution. The subpoena additionally referred to another matter which is not presented for appellate review. The motion for protective order stated that the information sought to be elicited by the state comprised privileged attorney-client communications and was not subject to any exception which would allow its disclosure. The motion further asserted that the Florida Bar had responded to the attorney's request for an ethical opinion by stating that the matters described were privileged and should not *1227 be revealed. Following consideration of the motion, the state's response and the parties' memoranda of law, a hearing was held at which testimony of the former attorney was taken. The court ruled that the attorney-client privilege did not apply to the communication between appellant and his former attorney in connection with arranging Hoyas' surrender to the police.
At trial appellant testified in his own behalf. His defense was that a friend of his, not he, had committed the offenses charged. This defense was countered by the testimony, as court witnesses, of three other young friends of appellant who were with him at his home around the time of the alleged offenses. Defense counsel asked appellant during his testimony, on direct examination, whether he ever made an effort with his former attorney to turn himself in, and if so, what he did. Hoyas testified that when he found out the police were looking for him, he hired an attorney to find out what was going on and that when his attorney told him he was wanted on suspicion of first degree murder, "I told my attorney I hadn't done it."[1] (This communication took place in his attorney's car, on the way to the police station.) The court then ruled at a bench conference that Hoyas had waived any right to assert the attorney-client privilege as to what he had told his former attorney on this subject matter during their referred-to conversation, and had done so in order to give information beneficial to himself. Subsequently, the court ruled that appellant had opened cross-examination on that conversation and impeachment by the attorney should that become necessary, and further, that the attorney would be subjected to a jail sentence for contempt if he should refuse to testify.
During appellant's cross-examination, the trial court allowed the state to question him, over objection and motion for mistrial, regarding the entire communication, which Hoyas admitted had included some of the details of the crime. Further questions were asked relating to whether Hoyas had told his then-attorney that the victim had begged for his life, to which he replied in the negative. (Appellant's earlier testimony on direct examination was that this "friend" told him he first shot the victim accidentally, during a struggle over his gun.) Appellant also testified on cross-examination that in their conversation, he had told his attorney someone got killed near a lake, "over drugs," and that when his attorney asked him why anyone would kill anybody for $300, he shrugged his shoulders, indicating he did not know.
The former attorney was called as a rebuttal witness and testified, under threat of imprisonment for contempt and after unsuccessfully attempting to invoke the privilege, that Hoyas had told him the victim had been killed in a kneeling position after pleading for his life and that other persons accompanying the killer could not dissuade him. Additionally, the attorney testified that he had asked Hoyas why he would kill anybody for $300 and that Hoyas had shrugged his shoulders. On cross-examination, however, he said he may have asked, "How did it happen?" or, "How did the victim get killed?" On redirect examination he stated that Hoyas had never told him someone else committed the crime. Thus, his testimony generally served to rebut and impeach that of appellant as to the foregoing matters.
We now examine, in the light of the applicable law, appellant's more specific contentions that the substance of the former attorney's testimony was privileged communication under the attorney-client privilege, that any waiver which may have occurred through the appellant's testimony on direct examination was necessarily limited and that, accordingly, the scope of both the state's cross-examination of appellant and the former attorney's rebuttal testimony was impermissibly broad.
The attorney-client privilege has historically been recognized in the common law as an exception to the right of testimonial *1228 compulsion. 8 Wigmore, Evidence, § 2290 (McNaughton rev. 1961). The privilege arises under the following circumstances:
(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.
8 Wigmore, Evidence, supra, § 2294, at 554. The privilege is well-established in the case law of this state, Seaboard Air Line R. Co. v. Timmons, 61 So.2d 426, 428 (Fla. 1952); Keir v. State, 152 Fla. 389, 11 So.2d 886 (1943); Lee v. Patten, 34 Fla. 149, 15 So. 775 (1894); Dionise v. Keyes Co., 319 So.2d 614 (Fla. 3d DCA 1975), and has been codified in section 90.502, Florida Statutes (1981). In addition, the attorney's responsibilities regarding confidentiality of attorney-client communications are set forth in the Fla. Bar Code of Professional Responsibility, Ethical Canon 4, EC 4-1  EC 4-6, and Disciplinary Rule DR 4-101. The privilege is said to apply in a case, such as this one, where a confidential communication is made to an attorney with a view toward his employment, regardless of whether the attorney is subsequently retained, see Keir v. State, supra; 3 Wharton's Criminal Evidence § 557 (C. Torcia, 13th ed. 1973), and it endures even after the attorney-client relationship terminates. 3 Wharton's Criminal Evidence, supra, § 560; Fla. Bar Code of Prof.Resp., EC 4-6. The policy behind the privilege is to promote freedom of consultation with legal advisors without fear of compelled disclosure, however, it has been said that the privilege, being an "exception to the general duty to disclose" and an "obstacle to the investigation of the truth," "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." Anderson v. State, 297 So.2d 871, 872 (Fla. 2d DCA 1974), quoting from 8 Wigmore, Evidence, supra, § 2291. See also State v. Sandini, 395 So.2d 1178 (Fla. 4th DCA), pet. for rev. denied, 408 So.2d 1095 (Fla. 1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).
We assume, for the sake of argument, that the initial communication in question does not fall within the exception to confidentiality for a communication which is intended [when made] by the client to be disclosed to third persons other than those necessary to render legal services or to transmit such communication. §§ 90.502(1)(c), 90.507, Fla. Stat. (1981); see, e.g., Mobley v. State, 409 So.2d 1031 (Fla. 1982); Dees v. Scott, 347 So.2d 475 (Fla. 1st DCA 1977).[2] Nonetheless, we believe the record herein fully supports the trial court's determination that the attorney-client privilege, if applicable, was waived by appellant's voluntary disclosure, during his testimony at trial, of a significant part of the communication wherein he told his attorney he `didn't do it.'
The relevant rules with regard to waiver of the privilege are stated by Wigmore, as follows:
(4) The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.
(5) The client's offer of his own or the attorney's testimony as to a part of any communication to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness... .
8 Wigmore, Evidence, supra, § 2327 at 637 (emphasis in original). Accord: McCormick, *1229 Evidence, § 93 at 224 and cases cited n. 6 (E. Cleary, 3d ed. 1984); 3 Wharton's Criminal Evidence, supra, § 561 at 83. In the case upon which the trial court principally relied in ruling on the waiver issue sub judice, it is stated that
the privilege was intended as a shield, not a sword. Consequently, a party may not insist upon the protection of the privilege for damaging communications while disclosing other selected communications because they are self-serving.
International Tel. & Tel. Corp. v. United Tel. Co. of Florida, 60 F.R.D. 177, 185 (M.D.Fla. 1973). Accord: Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 24 (9th Cir.1981); Smith v. Alyeska Pipeline Service Co., 538 F. Supp. 977 (D.Del. 1982); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926 (N.D.Cal. 1976).
The Florida statutes similarly provide that the privilege may be waived by voluntary disclosure.[3] In the only analogous Florida case, Seaboard Air Line Ry. v. Parker, 65 Fla. 543, 62 So. 589 (1913), the supreme court held that no waiver occurred where a client/plaintiff testified on cross-examination, without objection, that he had not made a certain statement to his then-attorney (i.e., that he was "ruptured" before the accident which gave rise to his negligence action). We find distinguishable the Parker court's bare conclusion of non-waiver. It has been criticized as contrary to the usual rule that the client waives the privilege when he testifies regarding a privileged communication either on direct or cross-examination (absent facts showing the client was surprised or misled). McCormick, Evidence, supra, § 93 at 224. An "arguable" basis for distinguishing Parker's result, "that a layman might not realize when he anticipated making such an answer [denying a particular communication on cross-examination], that there was any occasion to claim privilege[,]" McCormick, Evidence, supra, § 93 at 224, n. 9, is not present in the instant case. Here, appellant made an affirmative statement in response to a question from his own counsel during direct examination, thus belying any claim that he was surprised or misled. His statement regarding what he told his attorney was gratuitous  he was merely asked what he did, in making an effort with his attorney to turn himself in. Appellant's self-serving statement was given under circumstances which required waiver of the attorney-client privilege in order to allow cross-examination, rebuttal and impeachment of appellant's testimony, in the interest of fairness.[4] We note also that the diligent attempts of appellant's trial counsel to invoke the privilege on behalf of his client, after the statement was made, could not suffice in the face of his client's previous waiver. See § 90.507, Fla. Stat. (1981).
Finally, we reject appellant's contention that the waiver was necessarily limited and thus the scope of appellant's cross-examination and the former attorney's rebuttal and impeachment of appellant's testimony was impermissibly broad. Having testified on direct examination to part of the privileged communication, appellant was not entitled to object to disclosure of the remainder of his conversation with his attorney on the subject of what he told him about the crime and his role in it.
We have carefully considered appellant's remaining points and find that no reversible error is demonstrated thereby. Accordingly, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] The attorney had previously testified at trial on behalf of the state, without objection, regarding appellant's effort to have him negotiate a voluntary surrender and the results thereof.
[2] The trial court may have concluded otherwise in its pre-trial ruling. However, this issue is not dispositive, since we view the controlling question to be that of appellant's waiver of the privilege at trial.
[3] Section 90.507, Florida Statutes (1981), provides, in pertinent part, as follows:

90.507 Waiver of privilege by voluntary disclosure.  A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if he, or his predecessor while holder of the privilege, voluntarily discloses or makes the communication when he does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication.
[4] The "objective consideration" of fairness, together with the element of implied intention, constitute the "double elements that are predicated in every waiver." 8 Wigmore, Evidence, supra, § 2327 at 636.