495 So.2d 257 (1986)
The STATE of Florida, Petitioner/Respondent,
v.
Samuel J. RABIN, Jr., et al., Respondents/Petitioners.
Nos. 86-28, 85-2898.
District Court of Appeal of Florida, Third District.
September 30, 1986.
*258 Jim Smith, Atty. Gen., and Michael J. Neimand, Miami, for petitioner/respondent.
Weiner, Robbins, Tunkey & Ross and Peter Raben, Miami, for respondents/petitioners.
Before BASKIN, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
The parties to this cause filed petitions for writ of certiorari seeking review of an order of the circuit court which denied in part and granted in part Rabin's motion to quash a subpoena duces tecum. For the following reasons, we grant in part the relief sought by the State of Florida and deny the relief sought by Rabin and Diaz.
This cause arises from Rabin's representation of a Richard Caride in a criminal prosecution in Dade County. Caride and one Carlos Simon were charged with murder. In the course of his representation of Caride, Rabin met with Diaz, Caride's former wife. The purpose of the meeting was to enable Rabin to gather information about Caride's case, although Diaz also had been attempting to contact Rabin to discuss Caride's case. At or near the outset of the meeting, Diaz asked Rabin whether their conversation would be "repeated," and Rabin assured her that it would be kept confidential. At the end of their conversation, Rabin advised Diaz that she would probably need counsel but that, because of a possible conflict of interest, he could not represent her.
Caride subsequently pled guilty and became a witness for the prosecution in Simon's case. Caride testified at Simon's trial that he had told Diaz certain facts pertinent to the homicide. In her testimony at trial, Diaz denied that she had been told these facts. Simon was acquitted. Thereafter, the state attorney's office issued a subpoena duces tecum upon Rabin for "[a]ny and all notes or documents related to the conversation you [Rabin] had with witness Fara Diaz as to her knowledge of the ... homicide." Rabin moved to quash the subpoena on the grounds that the matters sought to be produced were protected by the attorney-client privilege and the work-product doctrine. Diaz's motion to intervene as a party in interest was granted.
A hearing was held on Rabin's motion to quash. At the hearing, Caride waived any and all privileges that he had with respect to the conversation between Rabin and Diaz. After the taking of testimony, arguments of counsel, and presentation of memoranda of law, the trial court entered the order under review. The court found that (1) no attorney-client relationship was established between Rabin and Diaz, (2) Diaz *259 could not assert the work-product privilege, and (3) the work-product privilege, as asserted by Rabin, "is secondary in this criminal proceeding." The order provides as follows:
Accordingly [Rabin's] Motion to Quash the Subpoena Duces Tecum ... is hereby denied. However, Petitioner Rabin is commanded to produce only existing documents related to the conversation between himself and the witness, Fara Diaz, as it relates to her knowledge of the ... homicide. He is not required to produce his personal notes containing his opinions, theories, or conclusions concerning these conversations. Neither is he required to respond to questioning regarding the conversations that took place between himself and the witness Diaz.
* * * * * *
Should Petitioner Rabin have in his possession any documents relating to these conversations which he questions should be produced pursuant to this Order, this Court instructs [Rabin] to produce the documents for an in-camera inspection by this Court at which time this Court will excise from these documents any matter which might be considered opinions, theories, or conclusions of [Rabin] which remain privileged.
In its petition, the state contends that the work-product doctrine is inapplicable here because the case for which the subpoenaed matters were generated is now closed and disclosure is being sought in the investigation of a witness to the prior litigation, not of the defendant. In the petition filed by Rabin and Diaz, Rabin contends that the trial court erred in finding the work-product doctrine to be "secondary" in this criminal proceeding, and Diaz contends that her statements are protected by the attorney-client privilege.[1]

ATTORNEY-CLIENT PRIVILEGE
The trial court determined that Diaz's conversation with Rabin was not protected by the attorney-client privilege because no attorney-client relationship existed between Rabin and Diaz. We cannot conclude that the trial court departed from the essential requirements of the law in this regard.
The attorney-client privilege is designed to encourage clients to disclose fully to counsel all pertinent facts, whether favorable or unfavorable, so that counsel can provide competent and effective legal representation. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39, 51 (1976); In re Murphy, 560 F.2d 326, 337 (8th Cir.1977); Hoyas v. State, 456 So.2d 1225, 1228 (Fla. 3d DCA 1984). The privilege is well established in the common law, Hoyas, 456 So.2d at 1228, and has been codified in section 90.502, Florida Statutes (1985). Section 90.502 provides, in relevant part,
90.502 Lawyer-client privilege. 
(1) For purposes of this section:
(a) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
(b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer.
(c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
2. Those reasonably necessary for the transmission of the communication.
(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person *260 learned of the communications because they were made in the rendition of legal services to the client.
(3) The privilege may be claimed by:
(a) The client.
* * * * * *
(e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.
Thus, not all confidential communications between an attorney and others are protected under the attorney-client privilege. The privilege protects only those confidential communications which are between an attorney and a "client." A person obtains the status of a "client" by consulting an attorney for the purpose of obtaining legal advice. § 90.502(1)(b), Fla. Stat. (1985); Marshall v. Marshall, 282 S.C. 534, 320 S.E.2d 44, 47 (Ct.App. 1984); see In re Colocotronis Tanker Securities Litigation, 449 F. Supp. 828, 831-32 (S.D.N.Y. 1978). Whether the person seeking legal advice subsequently retains the attorney is irrelevant. Hoyas, 456 So.2d at 1228.
The burden of establishing the existence of an attorney-client relationship rests with the claimant. In re Matter of Walsh, 623 F.2d 489, 493-94 (7th Cir.), cert. denied, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); In re Katz, 623 F.2d 122, 125 (2d Cir.1980). In determining whether a privileged attorney-client relationship exists, the primary focus is on the intent of the person claiming the privilege. Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir.1984); Westinghouse Electric Corp. v. Kerr-McKee Corp., 580 F.2d 1311, 1319 (7th Cir.), cert. denied, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).
At the hearing below, Diaz testified that she went to Rabin's office because Rabin had asked to speak with her about Caride's case and that it was only at the end of their conversation, when Rabin told her she would probably need counsel, that she first thought she might need an attorney. Diaz's own testimony then does not support the existence of an attorney-client relationship because it does not indicate that she was consulting with Rabin for the purpose of obtaining legal advice.[2],[3] Her communications, therefore, are not protected by the attorney-client privilege.

WORK-PRODUCT DOCTRINE
The more difficult question presented is whether the information sought in the subpoena is protected under the work-product doctrine.
There can be no doubt that the subpoenaed materials and Rabin's knowledge of Diaz's statements constitute work product. Beginning with the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a civil case from which the work-product doctrine springs, the courts have consistently held that statements by witnesses taken in anticipation of litigation constitute work product. See, e.g., Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 112 (Fla. 1970); Scotchel Enterprises, Inc. v. Velez, 455 So.2d 1129 (Fla. 4th DCA 1984). In Surf Drugs, the Florida supreme court defined work product to include the
[p]ersonal views of the attorney as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, *261 diagrams and charts he may refer to at trial for his convenience, but not to be used as evidence... .
236 So.2d at 112 (emphasis added).
The courts have differentiated between oral and written statements of witnesses. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 399-402, 101 S.Ct. 677, 687-89, 66 L.Ed.2d 584, 597-99 (1981); Hickman; In re Grand Jury Investigation, 599 F.2d 1224, 1230-31 (3d Cir.1979). In Hickman, the Court held that written statements could be discovered but only upon a showing of necessity. As to oral statements, the Court stated, "But as to oral statements made by witnesses to [the attorney], whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production." Hickman, 329 U.S. at 512, 67 S.Ct. at 394, 91 L.Ed. at 463.
Although its genesis is found in a civil action, the work-product doctrine has since been held to apply to criminal cases, e.g., United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); Peel v. State, 154 So.2d 910 (Fla. 2d DCA 1963), appeal dismissed, 168 So.2d 148 (Fla. 1964), cert. denied, 380 U.S. 986, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965), and it is now incorporated (in part) in the Florida Rules of Criminal Procedure, Fla.R.Crim.P. 3.220(c)(1).
Diaz's statements were taken in preparation for Caride's trial, and, consequently, during the pendency of Caride's case, the subpoenaed materials and Rabin's knowledge of Diaz's statements constituted protected work product.[4]See George v. State, 397 N.E.2d 1027 (Ind.Ct. 1979); State v. Williams, 80 N.J. 472, 404 A.2d 34 (1979). Moreover, as oral statements, Diaz's communications were entitled to special protection. See, e.g., Upjohn Co., 449 U.S. at 399-402, 101 S.Ct. at 687-89, 66 L.Ed.2d at 597-99.
Having determined that the documents and notes sought in the subpoena and Rabin's knowledge of Diaz's statements constituted protected work product during the pendency of Caride's case, the question remains whether and to what extent the work-product privilege survives Caride's waiver and the termination of his case.[5] *262 To resolve this question, we bifurcate our analysis.
Work product can be divided into two categories: "fact" work product (i.e., factual information which pertains to the client's case and is prepared or gathered in connection therewith), and "opinion" work product (i.e., the attorney's mental impressions, conclusions, opinions, or theories concerning his client's case). In re Sealed Case, 676 F.2d 793, 810-11 (D.C. Cir.1982). A clear distinction has been drawn between these two types of work product with respect to the degree of protection provided. Western Fuels Association v. Burlington Northern Railroad, 102 F.R.D. 201, 204 (D.Wyo. 1984). Generally, fact work product is subject to discovery upon a showing of "need," whereas opinion work product is absolutely, or nearly absolutely, privileged.[6] The difference between the degrees of protection given oral and written statements is based partially upon this distinction between fact and opinion work product. Compelling disclosure of the attorney's notes or memoranda of oral statements tends to reveal an attorney's opinion work product. Upjohn Co., 449 U.S. at 399-401, 101 S.Ct. at 687-89, 66 L.Ed.2d at 597-99; In re Grand Jury Investigation, 599 F.2d at 1231.[7]
An attorney cannot have any significant interest in fact work product where his client has waived all privileges related thereto and the litigation for which the work product was generated has terminated. Some of an attorney's interests in opinion work product, however, survive the client's waiver and the termination of the litigation for which the work product was prepared.[8]
*263 The courts have consistently recognized that an attorney has a significant privacy interest in non-disclosure of opinion work product. E.g., DuPlan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730, 734-36 (4th Cir.1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); In re Special September 1978 Grand Jury, 640 F.2d 49, 63 (7th Cir.1980). Justice Jackson, concurring in Hickman, 329 U.S. at 514-15, 67 S.Ct. at 395, 91 L.Ed. at 464, emphasized the importance of protecting work product for the sake of the lawyer:
The primary effect of the practice advocated here would be on the legal profession itself. But it too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. Law-abiding people can go nowhere else to learn the ever changing and constantly multiplying rules by which they must behave and to obtain redress for their wrongs. The welfare and tone of the legal profession is therefore of prime consequence to society, which would feel the consequences of such a practice as petitioner urges secondarily but certainly.
The protection of an attorney's mental process is essential to the proper functioning of the adversary system. The possibility that an attorney's work product might be revealed, even in later unrelated causes, may deter the attorney from freely recording his mental impressions, conclusions, theories, or opinions. DuPlan Corp., 509 F.2d at 734-36. Moreover, this privacy interest is equally implicated where, as here, disclosure is sought pursuant to an investigative subpoena as it is where disclosure is being sought pursuant to a discovery request. Cf., e.g., In re Grand Jury Proceedings, 473 F.2d 840, 847 (8th Cir.1973) ("The interest in protecting work product which prevails in [a] ... criminal proceeding should, for the same policy reasons, prevail in [a grand jury proceeding].").
As an attorney, Rabin cannot, under the circumstances of this case, have any significant interest in the substance of Diaz's communications. However, to the extent that compliance with the subpoena may cause his mental impressions, conclusions, opinions, or theories to be revealed, Rabin's interest in keeping them private remains. Conversely, the state's interests lie solely in the substance of Diaz's communications; it can have no legitimate interest in obtaining Rabin's opinion work product. Given this alignment of interests, we need not decide whether, as a general proposition, the work-product privilege is "secondary" to the state's authority and need to accomplish its investigatorial duties in connection with a cause which is initiated subsequent to the completed litigation for which the work product was created. See In re Grand Jury Matters, 593 F. Supp. 103 (D.N.H.), aff'd, 751 F.2d 13 (1st Cir.1984); In re Grand Jury Proceedings; Maguire v. State, 458 So.2d 311 (Fla. 5th DCA 1984).
Based on the foregoing discussion, we conclude that the state is entitled to all the factual information which Diaz transmitted to Rabin during their conversation but is not entitled to Rabin's opinion work product. The trial court's order does not sufficiently recognize this distinction.
The trial court ordered that Rabin need not respond to questioning regarding the conversation that took place between Diaz and him. We conclude the trial court departed from the essential requirements of the law in this regard. Attorneys are not exempt from the duty to provide evidence to the state merely because they are attorneys. Cf. In re Grand Jury Subpoena Served upon Doe, 781 F.2d 238, 249 (2d Cir.) (attorneys are not exempted from duty to appear and give evidence before grand jury), cert. denied, ___ U.S. ___, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). Because Rabin can have no significant interest *264 in the substance of Diaz's statements, the state should be permitted to question Rabin regarding Diaz's communications. Rabin need not respond to questions concerning his half of the conversation or to questions which would require him to reveal either his mental impressions of the conversation, or his conclusions, opinions, or theories drawn therefrom; he need only respond to questions concerning the content of Diaz's statements.
As to any existing documents and notes, we conclude that the trial court did not depart from the essential requirements of the law in ordering that Rabin produce documents relating to his conversation with Diaz but that he need not produce his notes. Documents constitute fact work product. See, e.g., Fla.R.Civ.P. 1.280(b)(2). As stated above, Rabin can have no significant interest in this type of work product. To the extent Rabin may have indicated his impressions, conclusions, opinions, or theories on the documents, the trial court properly ordered an in-camera inspection of the documents to insure that Rabin's mental processes remain private. Rabin's notes may also contain factual information. However, because notes of a conversation with a witness "are so much a product of the lawyer's thinking and so little probative of the witness's actual words," In re Grand Jury Investigation, 412 F. Supp. 943, 949 (E.D.Pa. 1976), and because Rabin is available to answer questions, see In re Grand Jury Investigation, 599 F.2d at 1231, we think the trial court properly denied the state access to Rabin's notes.
Approved in part, quashed in part, and remanded for further proceedings in accordance with the views expressed herein.
NOTES
[1] Diaz does not seek review of that portion of the order which found she could not assert the work-product privilege.
[2] Rabin's testimony at the hearing was consistent with Diaz's in all material respects.
[3] Diaz contends that she was "rendered legal services by a lawyer" within the meaning of section 90.502(1)(b), Florida Statutes (1985), because Rabin advised her of her "status," i.e., that she needed to consult counsel. Even if the giving of such advice constitutes the rendering of legal services, it could not serve as a basis for protecting Diaz's earlier communications because those communications were not made for the purpose of receiving said legal services. See Fisher, 425 U.S. at 403, 96 S.Ct. at 1577, 48 L.Ed.2d at 51 (attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege"); § 90.502(1)(c)1, (2).
[4] The state's contention that Diaz's statements are not work product is without merit. For this proposition, the state relies primarily on Balboa v. State, 446 So.2d 1134 (Fla. 3d DCA 1984), in which this court held that tape-recorded statements of two state witnesses were not privileged from discovery. In Balboa, the court made the following statement: "Thus, opinions, theories, or conclusions of attorneys are privileged, but statements of witnesses to attorneys are not." Balboa, 446 So.2d at 1135. This statement cannot be read independently of the context out of which it arises. The statements involved in Balboa were recorded and, thus, were discoverable under Florida Rule of Criminal Procedure 3.220(a)(1)(ii), which specifically provides that such statements shall be disclosed to the defendant upon demand. Diaz's statements were not recorded. Further, Diaz was not to be called as a defense witness. Therefore, even if Caride had invoked reciprocal discovery, Diaz's statements would not have been discoverable under Florida Rule of Criminal Procedure 3.220(b)(4)(i). Similarly, the state could not have discovered the materials sought by the subpoena. Under the reciprocal discovery rule, the defendant need only disclose those "tangible papers or objects which the defense counsel intends to use in the hearing or trial." Fla.R. Civ.P. 3.220(b)(4)(iii). In any event, the reciprocal discovery rule is not even applicable here. The state is not seeking discovery in an ongoing prosecution but rather is seeking production of notes and documents by way of subpoena in order to investigate the possible commission of a crime.
[5] A split of authority exists on whether the work-product privilege extends beyond the case for which the work product was gathered. Alachua Gen. Hosp. v. Zimmer USA, Inc., 403 So.2d 1087, 1088 (Fla. 1st DCA 1981). The following views have been expounded: (1) the privilege applies only if the work product was gathered in anticipation of the very case in which the privilege is sought, e.g., United States v. International Business Machs. Corp., 66 F.R.D. 154, 178 (S.D.N.Y. 1974); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 207 F. Supp. 407, 410 (M.D.Pa. 1962); (2) the privilege extends beyond the case for which the work product was prepared to all subsequent cases, e.g., In re Murphy, 560 F.2d at 334; United States v. O.K. Tire Co., 71 F.R.D. 465, 468 n. 7 (D.Idaho 1976); and (3) the privilege extends to only those subsequent cases which are closely related, e.g., Hercules Inc. v. Exxon Corp., 434 F. Supp. 136, 153 (D.Del. 1977); Midland Inv. Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134 (S.D.N.Y. 1973).
[6] This distinction was first made in Hickman and is recognized by the Federal and Florida rules of procedure. Under Florida Rule of Civil Procedure 1.280, which is derived from Federal Rule of Civil Procedure 26, a party may obtain discovery of documents and tangible things prepared in anticipation of litigation by another party (i.e., fact work product) upon a showing of need and inability to obtain the substantial equivalent of such materials without undue hardship; however, with respect to the mental impressions, conclusions, opinions, or legal theories of an attorney (i.e., opinion work product), the rule provides that "the court shall protect against disclosure." Fla.R.Civ.P. 1.280(b)(2) (emphasis added). Similarly, Florida Rule of Criminal Procedure 3.220(c)(1) reads as follows:

(c) Matters Not Subject to Disclosure.
(1) Work Product. Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda, to the extent that they contain the opinions, theories, or conclusions of the prosecuting or defense attorney, or members of his legal staff.
In construing the language of Federal Rule of Civil Procedure 26(b)(3) which provides that the court shall protect against disclosure of opinion work product, some Federal courts have held that no showing of necessity can overcome the protection provided to such work product. See, e.g., DuPlan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730 (4th Cir.1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). Other Federal courts have declined to adopt an absolute rule but have indicated that opinion work product is entitled to special protection. See, e.g., In re Grand Jury Investigation, 599 F.2d at 1231; In re Murphy, 560 F.2d at 336. In Upjohn Co., the Supreme Court, while declining to reach the issue of whether opinion work product is absolutely privileged, stated, "As Rule 26 and Hickman make clear, such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." Upjohn Co., 449 U.S. at 401, 101 S.Ct. at 608, 66 L.Ed.2d at 599.
[7] Two other reasons for the heightened degree of protection given oral statements are: (1) compelling an attorney to testify as to such statements would likely disrupt the attorney-client relationship, see United States v. Colacurcio, 499 F.2d 1401, 1403-04 (9th Cir.1974); In re Grand Jury Investigation, 412 F. Supp. 943, 945-46 (E.D.Pa. 1976); and (2) such testimony could not qualify as evidence, Hickman, 329 U.S. at 513, 67 S.Ct. at 394, 91 L.Ed. at 463. These reasons are not applicable here.
[8] The work-product doctrine seeks to protect "a complex of interrelated interests." In re Sealed Case, 676 F.2d at 809 n. 56. Like the attorney-client privilege, the work-product doctrine seeks to protect the client's interests in obtaining complete legal representation, id.; In re Special September 1978 Grand Jury, 640 F.2d 49, 62 (7th Cir.1980); however, unlike the attorney-client privilege, the work-product doctrine also seeks to protect certain interests peculiar to the attorney, In re Sealed Case, 676 F.2d at 809 & n. 56; In re Special September 1978 Grand Jury, 640 F.2d at 63. Thus, while the attorney-client privilege belongs to the client alone, the work-product privilege may be asserted by either the client or the attorney. In re Special September 1978 Grand Jury, 640 F.2d at 62; In re Grand Jury Proceedings, 604 F.2d 798, 801 (3d Cir.1979). Because Caride waived any and all privileges he may have had with respect to the conversation between Rabin and Diaz, we find it unnecessary to analyze his interests. We are concerned here only with Rabin's interests in the work product.