Erica TYNE, individually and on behalf of Frank William Tyne, Jr.; Billie–Jo Francis Tyne, individually and on behalf of Frank William Tyne, Jr.; and Jodi Tyne, Plaintiffs,

v.

TIME WARNER ENTERTAINMENT COMPANY, L.P., d/b/a: Warner Bros. Pictures; Baltimore/Spring Creek Pictures, L.L.C.; and Radiant Productions, Inc., Defendants.

No. 6:00–cv–1115–Orl–22JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 15, 2002.

Stephen J. Calvacca, Stephen J. Calvacca, P.A., Orlando, FL, W. Edward McLeod, Jr., W. Edward McLeod, PA, Winter Park, FL, for plaintiffs.

Steven L. Brannock, Gregg Darrow, Thomas, Rachel E. Fugate, Holland & Knight, LLP, Tampa, FL, Robert C. Vanderet, O'Melveny & Myers LLP, Los Angeles, CA, for defendants.

### ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on January 16—17, 2002 on the following motions:

1. Defendant Time Warner Entertainment Co., d/b/a/ Warner Bros. Pictures ("Warner Bros.") is the main production company, and defendants Radiant Productions ("Radiant") and Balti-

**MOTION: PLAINTIFFS' MOTION TO COMPEL DOCUMENTS (Doc. No. 56)**

**FILED: December 12, 2001**

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

**MOTION: DEFENDANTS' MOTION TO COMPEL DOCUMENTS (Docket No. 66)**

**FILED: January 10, 2002**

**THEREON** it is **ORDERED** that the motion is **DENIED** as untimely. The discovery deadline passed on December 14, 2001, and defendants offer no reason or explanation for the late filing of this motion.

### I. INTRODUCTION

Members of the Tyne family seek damages from three film production studios [1] that produced the film *The Perfect Storm.* The Tynes claim that the studios portrayed Captain Billy Tyne, deceased husband and father, in a negative light. The Tynes seek damages for unauthorized commercial misappropriation and invasion of privacy.

Plaintiffs' First Request for Production of Documents served on January 8, 2001 seeks documents which the production companies claim are privileged. *See* Docket No. 56, p. 2. The production companies served general objections to the request on February 9, 2001, and on April 2, 2001 served their complete response. The response stated that only non-privileged documents had been produced, but did not include a privilege log. On December 3, 2001, just three days before a deposition and two weeks before the close of discovery, defendants served a privilege log listing approximately 170 documents that had been withheld over the course of eight months.

On December 6, 2001, plaintiffs deposed Debra Padrick of Warner Bros., the author of the majority of the withheld documents. In deposing Padrick, plaintiffs had difficulty

more/Spring Creek Pictures ("Baltimore") are independent contractors that worked directly with Warner Bros. in the production of *A Perfect Storm.*

assessing the status of the allegedly privileged documents. The privilege log did not include adequate information, and the actual documents were not made available. On December 12, 2001, plaintiffs filed an Emergency Motion to Compel Production of Withheld Documents (Docket No. 56) asking the court to compel production of the documents listed on the privilege log. Plaintiffs argue that defendants waived their privilege as to these documents by failing to adhere to Fed. R.Civ.P. 26(b)(5) which requires that a privilege log sufficiently describe the privileged documents so as to permit other parties, including the court, to assess the applicability of the privilege. The motion was filed as an emergency motion because the discovery deadline passed on December 14, 2001.

Before a response to this motion was filed, the court reviewed the privilege log and found that it did not comply with the requirements of Rule 26(b)(5). The court scheduled plaintiffs' motion for hearing which began on January 16, 2001 and continued on January 17, 2001. *See* Docket. No. 58. The court now must determine whether the documents are privileged and, if so, whether that privilege has been waived.

## II. THE LAW

### A. Elements of Attorney–Client Privilege and Work–Product

Under Florida law,[2] information is protected from disclosure by the attorney-client privilege when it is a communication between a lawyer and client not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services, or those reasonably necessary for the transmission of the communication. Fla. Stat. § 90.502(1)(c). Florida law defines a "lawyer" as one who is authorized, or reasonably believed by the client to be authorized, to practice law. A "client" is defined as any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer. Fla. Stat. § 90.502(1)(a)—(b).

Under Florida law, the work-product doctrine protects from discovery all materials that are prepared in anticipation of litigation by or for a party or its representative, unless the party seeking discovery has need of the material and is unable to obtain the substantial equivalent without undue hardship. Fla. R. Civ. P. 1.280(b)(3). The Florida rule is similar to that stated in Federal Rule of Civil Procedure 26(b)(3).[3] The Florida Supreme Court further defined the work product doctrine by stating that

> [f]act work product traditionally protects that information which relates to the case and is gathered in anticipation of litigation. *State v. Rabin,* 495 So.2d 257 (Fla. 3d DCA 1986). Opinion work product consists primarily of the attorney's mental impressions, conclusions, opinions, and theories. *Id.* Whereas fact work product is subject to discovery upon a showing of 'need' and 'undue hardship,' opinion work product generally remains protected from disclosure.

*Southern Bell Telephone and Telegraph Co. v. Deason, et.al.,* 632 So.2d 1377, 1384 (Fla. 1994) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

### B. Scope of Privilege

The attorney-client privilege extends to agents and representatives of the attorney when disclosure is in furtherance of the rendition of legal services, or when disclosure is

---

**2.** Federal Rule of Evidence 501 states that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law."

**3.** Fed.R.Civ.P. 26(b)(3) states:
[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared

in anticipation of litigation or for trial by or for another party or by the other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

reasonably necessary for the transmission of the communication. Fla. Stat. § 90.502(c)(1)—(2).

It has never been questioned that the privilege protects communications to the *attorney's clerks* and his other agents (including stenographers) for rendering his services. The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.

8 J. Wigmore, Evidence § 2301 at 538 (McNaughton Rev. Ed.1961).

▮▮▮ The Florida Supreme Court has addressed the scope of the attorney-client privilege as applied to corporations. Specifically, the Court rejected the "control group" test in favor of the broader "subject matter" test. *Southern Bell,* 632 So.2d 1377 (Fla.1994). The control group test limits the privilege to those communications between the attorney and members of the corporation who are "in a position to control or even to take a substantial part in a decision about action which the corporation may take upon the advice of the attorney." *Southern Bell,* 632 So.2d 1377 at 1381 (citing *City of Philadelphia v. Westinghouse Elec. Corp.,* 210 F.Supp. 483 (E.D.Pa.1962)). Florida's subject matter test includes the following requirements:

1.) the communication would not have been made but for the contemplation of legal services;

2.) the employee making the communication did so at the direction of his or her corporate superior;

3.) the superior made the request of the employee as part of the corporations' effort to secure legal advice or services;

4.) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

5.) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Southern Bell,* 632 So.2d 1377, 1383 (Fla. 1994) (citing *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487 (7th Cir.1970) and *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1977)).

The Rules Regulating the Florida Bar state that:

An authorized house counsel shall not express or render a legal judgment or opinion to be relied upon by any person or party other than in the course of the authorized house counsel's representation of the business organization in which the authorized counsel is employed.

Rules Regulating the Florida Bar, Rule 17–1.3(d). Attorneys in the Warner Bros. legal department presumably follow the California Rules of Professional Conduct, which states:

In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement.

California rules of Professional conduct, Rule 3–600(A). The discussion following Rule 3–600 points out that the rule "is not intended to prohibit members from representing both an organization and other parties connected with it." California rules of Professional conduct, Rule 3–600, discussion.

### C. Burden of Proof

▮▮▮ The party invoking the privilege has the burden of proving its existence. *In re Grand Jury Investigation (Schroeder),* 842 F.2d 1223, 1225 (11th Cir.1987) (citing *In re Grand Jury Subpoena,* 788 F.2d 1511, 1511—12 (11th Cir.1986); *In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571, 1575 (11th Cir.1983)).

### III. APPLICATION AND ANALYSIS

The Tynes first argue that the production studios waived the attorney-client privilege because they failed to adhere to Rule 26(b)(5). Rule 26(b)(5) requires that a privilege log sufficiently describe the privileged

documents so as to permit other parties, and the court, to assess the applicability of the privilege. Fed.R.Civ.P. 26(b)(5). This court has already found that defendants' privilege log did not comply with this rule. *See* Docket No. 58. Nevertheless, the Court will not impose the harsh sanction of disclosure demanded by the Tynes.

■ Second, the Tynes argue that the studios waived the privilege when they failed to object to questions asked during the deposition of Debra Padrick. The Tynes argue that the studios waived the privilege because they failed to object to questions regarding the same subject matter as contained in the documents. Padrick is responsible for coordinating receipt of clearances for the use of copyrighted, trademarked, or otherwise legally protected material used in Warner Bros.' films. Padrick answered questions about Warner Bros.' policy with regard to clearances. The studios objected to, and Padrick declined to answer, questions about the considerations given to specific requests for clearance. It is the legal analysis and opinions regarding specific clearances, rather than the general policies that are protected by the privilege. The documents listed in the privilege log largely relate to specific clearances. Although a history of specific clearances does convey information about how Warner Bros.' policies are applied, the specific clearance opinions are protected and not discoverable.

■ Third, the Tynes argue that defendant Warner Bros.' waived its privilege when it distributed documents to persons outside the direct employment of Warner Bros., including to employees of the co-defendant studios Radiant and Baltimore. The Tynes argue that the privilege exists only as between the legal department at Warner Bros. and employees of Warner Bros. Any disclosure to persons outside of Warner Bros., the Tynes argue, waives the privilege. The documents reviewed in camera demonstrate that Radiant and Baltimore employees both solicited and received advice from the Warner Bros.

legal department about how to protect their common legal interests in avoiding liability. While employees of Radiant and Baltimore may not be clients of the Warner Bros. legal department, Warner Bros. required their cooperation with regard to the production of *A Perfect Storm* in order to protect Warner Bros.' legal interests. Radiant and Baltimore were involved in a project akin to a "joint venture" with Warner Bros., and the actions of Radiant and Baltimore employees regarding improper clearance could subject Warner Bros. to liability. The advice of the Warner Bros. legal department would be useless to Warner Bros. if the advice could not be disseminated to the few key individuals who were intimately involved in the joint production of *The Perfect Storm.* Therefore, disclosure to these individuals who have a common legal interest does not constitute a waiver of privilege. These individuals include Wolfgang Petersen, Gail Katz, Paula Weinstein, Bill Wittliff, Bo Goldman, Brian McNulty, and Duncan Henderson. The privilege may be waived, however, if the recipients freely disseminate the documents further.[4]

Fourth, the Tynes argue that the privilege may not exist at all to the extent that the documents are authored by Padrick, who is not an attorney. The Tynes contend further that Padrick is not an agent of the attorneys in the legal department at Warner Bros. Padrick's title is Director, Theatrical Productions, Clearance and Permissions. Plaintiffs contend that she is the director of a department within Warner Bros. that is separate and apart from the legal department. However, Padrick's job includes disseminating legal advice from the legal department to key individuals who must act on the advice in order to protect Warner Bros. She also fields questions about clearance decisions, and directs them to the legal department. The Tynes seek mainly these types of correspondence. Many aspects of Padrick's job include acting as an extension or agent of the legal department. Padrick's direct supervi-

---

**4.** Most of the documents in question are labeled "attorney-client privilege." This label may serve to put recipients on notice that the document is confidential, but it does not at all prove the existence of privilege. In the same manner, distributing carbon copies to attorneys or "legal files" does not prove the existence of a privilege.

sor is Jeremy Williams, head of Warner Bros.' legal department. Padrick testified that she has direct, daily contact with Williams. While many of the duties Padrick and her small staff carry out are administrative and routine in nature, and do not require legal analysis or opinion, Padrick regularly consults with the attorneys on issues before passing on information to the people actively involved in the production of the film.

Finally, even if the documents were not protected from discovery by the attorney-client privilege, they may be protected by the work product doctrine. While many of the documents are created and circulated with the purpose of avoiding litigation, some documents indicate that specific litigation had been overtly threatened. Many, if not all, of the documents are protected by the work product doctrine because they were developed in order to avoid, and eventually to defend against, threatened or anticipated litigation. The production companies accurately anticipate that they may be sued for misuse of certain material in their films. The legal department analyzes the legal risks of including such material in the film, and either obtains what it believes to be adequate clearance, or recommends that the studio not include the material in the film. The work product associated with this process is produced in anticipation of litigation, and is protected from discovery. Plaintiffs have failed to demonstrate need and undue hardship in order to overcome that protection.

## IV. CONCLUSION

The court has reviewed all of the proffered documents in camera. Some of the documents are protected by privilege, and shall not be produced. The remainder are not protected by privilege, and shall be produced. Correspondence between employees of Warner Bros., as well as certain associates of other defendants in the case, and the legal department at Warner Bros. is protected from discovery by the attorney-client privilege so long as it is for purposes of securing legal advice with regard to *The Perfect Storm*.[5] Therefore, it is **ORDERED** that

defendants shall produce to plaintiffs any documents that have been disclosed to any person who is not an employee of Warner Bros., and who is not one of the named individuals employed by Radiant and Baltimore. It is

**FURTHER ORDERED** that the clerk will return documents submitted in camera to Defendants' counsel, but Defendants' counsel shall keep the documents in their current state until any appeals in this case have been resolved. It is

**FURTHER ORDERED** that the following documents are protected by privilege and shall not be produced to the plaintiffs: 3—11, 12 (email and interoffice memo only), 13—16, 18—22 (no document at Tab 21), 24, 25 (interoffice memo only), 26 (interoffice memo only), 27—28, 30—33, 34 (fax and any emails sent to persons covered by privilege only), 35—36, 38, 39 (interoffice memo only), 40—41, 42 (interoffice memo only), 43, 44 (interoffice memo and any emails sent to persons covered by privilege only), 45, 46 (interoffice memo only), 47, 48 (interoffice memo only), 49, 50 (only those emails sent to persons covered by privilege), 51—53, 54 (office memo only), 55—57, 58 (interoffice memo/notes and copy of correspondence including handwritten notes only), 59, 61—63, 65 (interoffice memo only), and 66—76. It is

**FURTHER ORDERED** that the following documents are not privileged and shall be produced to plaintiffs: 1 (free distribution invited), 2 (memo between non-Warner Bros. employees with copy to legal department), 12 (letter and fax to Leslie Shocket only), 17, 23, 25 (letter to Todd Gross only), 26 (letter from Coast Guard only), 29, 37, 39 (letters to/from third parties only), 42 (correspondence with Lloyd's only), 46 (letters to/from third parties only), 48 (letters to/from third parties only), 54 (correspondence only), 58 (correspondence with third party only), 60, 64, and 65 (correspondence to/from third parties only).

---

5. The record does not disclose the names of every individual whose knowledge of clearance issues is necessary to protect the legal interests of Warner Bros. The court nevertheless has made every effort not to deem privileged a document that was, in fact, disclosed to a person outside of this group.