**IN RE:TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION, Debtor.**

**Certain Underwriters at Lloyd's, London and London Market Insurance Companies, etc. Plaintiffs,**

**v.**

**Taylor, Bean & Whitaker Mortgage Corporation, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, and Sovereign Bank, Defendants.**

**Case No.: 3:09–bk–7047–JAF**
**Adv. Pro. No. 3:10–ap–243–JAF**

United States Bankruptcy Court, M.D. Florida **Jacksonville Division**

July 12, 2013

Alessandro A. Apolito, Brennan Manna & Diamond PL, 800 West Monroe Street, Jacksonville, FL 32202, (904) 366-1500, (904) 366-1501 (fax), representing Dimension Data (Defendant)

Matthew I. Rochman, Wargo & French LLP, 201 S. Biscayne Blvd., 28th Floor Miami, FL 33131, 305-777-6012, 305-777-6001 (fax), mrochman@wargofrench.com, representing RLI Insurance Company, Wargo & French LLP, 201 S. Biscayne Blvd., Suite 1000, Miami, FL 33131, 305-777-6000, 305-777-6001 (fax), mrochman@wargofrench.com (Defendant)

Russell M. Blain, Stichter, Riedel, Blain & Prosser, 110 East Madison Street, Suite 200, Tampa, FL 33602, 813-229-0144, 813-229-1811 (fax), rblain.ecf@srbp.com, Amy Denton Harris, Stichter Riedel Blain & Prosser PA, 110 E Madison Street, Suite 200, Tampa, FL, 33602-4700, (813) 229-0144, (813) 229-1811 (fax), aharris.ecf@srbp.com, Edward J. Peterson, III, Stichter, Riedel, Blain & Prosser, PA, 110 East Madison Street, Suite 200, Tampa, FL 33602, (813) 229-0144, (813) 229-1811 (fax), epeterson@srbp.com, Kristopher E. Aungst, Berger Singerman PA, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, (305) 755-9500, (305) 714-4340 (fax), kaungst@bergersingerman.com, representing Taylor, Bean & Whitaker Mortgage Corp., 4901 Vineland Road, Ste 120, Orlando, FL 32811 (Debtor)

## ORDER DIRECTING THAT DISCOVERY RELATED DOCUMENTS REDACTED AND WITHHELD BY UNDERWRITERS BE FILED UNDER SEAL FOR IN CAMERA INSPECTION

JERRY A. FUNK, United States Bankruptcy Judge

This proceeding is before the Court on Taylor, Bean & Whitaker Mortgage Cor-

poration's ("TBW") Motion to Compel Underwriters[1] to Produce Documents (Doc. 465, the "Motion"). Defendants Federal Loan Mortgage Corporation ("Freddie Mac") and Sovereign Bank ("Sovereign") have each filed joinders to the Motion (Docs. 469, 471, and 489). Underwriters filed a response in opposition to the Motion (Doc. 485, the "Response"), to which TBW filed a reply brief (Doc. 490, the "Reply"). Also before the Court is Underwriters' sur-reply brief (Doc. 499–1, the "Sur–Reply").[2]

For the reasons stated below, the Court requires an *in camera* inspection of the documents redacted and withheld by Underwriters during discovery. In addition, the Court will direct that Underwriters file an accompanying memorandum setting forth a detailed explanation as to the basis for each assertion of privilege. The moving parties will be given an opportunity to file a response to Underwriters' memorandum in this regard.

## I. Background

On August 24, 2009, TBW filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the underlying case (3:09–bk–7047–JAF). Included in the assets of TBW's bankruptcy estate are certain fidelity bonds and insurance policies (collectively, the "Bonds"), which cover various types of losses attributable to, *inter alia,* errors and omissions by TBW's employees. Underwriters provide coverage under the Bonds.[3] The Bonds specify that they are governed by Florida law (Doc. 184–6 at 54).

On November 3, 2010, Defendant Government National Mortgage Association ("GNMA") served Underwriters with its First Request for Production of Documents (Doc. 465–1). On January 14, 2011, TBW served its First Request for Production of Documents upon Underwriters (Doc. 465–2). On August 19, 2011, Freddie Mac served Underwriters with its First Request for Production of Documents (Doc. 465–3). On February 15, 2012, Underwriters voluntarily produced Miller Insurance Services Limited's ("Miller") file for the 2007 and 2008 policy years, with an attendant privilege log (Doc. 465–4). On August 10, 2012, Sovereign issued a subpoena for the production of documents to Stateside Underwriting Agency ("Stateside"), the company which apparently provided banker's bonds to TBW in 2004, 2005, 2006 and 2007 (Doc. 373; Doc. 465 at 2).

TBW states that Underwriters' counsel, on behalf of all Underwriters, Miller, and Stateside, produced documents on a rolling basis, some of which were redacted—purportedly on bases set forth in certain privilege logs (Doc. 465 at 3; *see also* Docs.

---

1. Unless otherwise noted, "Underwriters" refers to Plaintiffs Certain Underwriters at Lloyd's, London and London Market Insurance Companies that subscribe to Certificate Nos. B0621PTAY00208, B0621PTAY00308, SUA 2896, B0621PTAY00207001, SUA 11239, B0621PTAY00408, SUA 11024, SUA 2664, P009560600, SUA 10837, SUA 2445, SUA 2387, P009560500, P009560501, SUA 10660, SUA 2251 and/or P00956004.

2. On June 19, 2013, Underwriters moved for leave to file a sur-reply brief (Doc. 499). No opposition to the motion was filed. Upon consideration of the motion, it is granted. The Sur–Reply (Doc. 449–1) is therefore deemed filed.

3. The Bonds are more particularly described in the Second Amended Complaint (Doc. 184 at 2–3). Underwriters brought the complaint, in part, to have the Bonds declared void *ab initio* or, in the alternative, requesting the Court to determine that coverage is nonetheless not afforded under the Bonds unless a loss covered thereunder can be proven *(see* Doc. 184 at 29).

465–4, 465–7). TBW asserts that, at the depositions of the corporate representatives of Miller and Underwriters in London, England, on February 12 through 15, 2013, it came to the conclusion that "some of the assertions of privilege made by counsel for Underwriters were baseless." (Doc. 465 at 3). By way of example, TBW asserts that "Stateside and Miller are independent and unrelated corporate entities, such that Stateside's disclosure of communications from its counsel to Miller would destroy Stateside's attorney-client privilege and subject the disclosed documents to production." *(Id.)*.

Underwriters' privilege logs (Docs. 465–4, 465–7) provide a description of the document(s) that were either redacted or withheld. In addition, the privilege logs provide the name of the author(s) and the recipient(s) of the documents *(id.)*. Many of the documents are described as email chains, which have as many as five authors *(see, e.g.,* Doc. 465–7 at 6). In addition, some documents have as many as sixteen recipients *(id.)*. Attached to Underwriters' Response are the affidavits of Richard Nowell, Scott Schmookler, and Clare Constable (Docs. 485–1, 485–2, 485–3).

Richard Nowell is an employee of Stateside (Doc. 485–1 at 1). In his affidavit he states that, between 2004 and 2009, Stateside acted as an underwriting agent for Underwriters, which granted Stateside the authority to underwrite certain banker's bonds and professional liability policies on behalf of Underwriters *(id.)*. Mr. Nowell further states, however, that Stateside did not act as Underwriters' agent with respect to the issuance of the 2008 Bonds to TBW *(id.)*. In addition, Mr. Nowell testifies that, at no point in time, was Stateside given the authority to waive the attorney-client privilege on behalf of Underwriters *(id.)*.

Scott Schmookler is an attorney who was formally a partner at the law firm of Clausen Miller (Doc. 485–2 at 1). Mr. Schmookler states that Clausen Miller was retained by Underwriters to act as their legal counsel with respect to the insurance claim submitted by TBW and the attendant litigation that ensued *(id.)*. In his affidavit, Mr. Schmookler explains that certain documents contained within the subject privilege logs were either redacted or withheld because they contain legal advice provided to Underwriters *(id.)*. Mr. Schmookler additionally states that certain documents were withheld based on the attorney work product doctrine *(id.* at 2). Further, Mr. Schmookler testifies that other documents were withheld or redacted because they contain information regarding: (1) other insurance policies; (2) other insureds; (3) reinsurance; or (4) reserves *(id.* at 2–3). The remaining documents were purportedly withheld as being irrelevant *(id.* at 2).

Clare Constable is employed by Canopius Managing Agents Limited ("Canopius") as a divisional head of claims (Doc. 485–3). Ms. Constable states that "Canopius manages Syndicate 4444 at Lloyd's and is the lead underwriter" *(id.* at 1).[4] Ms. Constable states that, after receiving notice of TBW's claim, Underwriters retained Clausen Miller to act as their legal counsel. Ms. Constable testifies that Clausen Miller did not act as a claim adjuster or investigator and that communications from Clausen Miller that were sent to Underwriters "were not shared with third parties." *(id.* at 2).

---

4. It is unclear from her statement whether Syndicate 4444 is the lead underwriter or if Canopius is the lead underwriter.

## II. Discussion

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure (made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure) provides, in pertinent part, that a party may obtain discovery regarding any non-privileged matter that is relevant. Moreover, the information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). A party withholding discovery by asserting a privilege has the burden of proving the existence of the privilege. *Tyne v. Time Warner Entm't Co., L.P.,* 212 F.R.D. 596, 599 (M.D.Fla. 2002).

■ Federal Rule of Evidence 501 (made applicable in this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure) provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law." Under Florida law, information is protected from disclosure by the attorney-client privilege when it is a communication between a lawyer and client not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services, or those reasonably necessary for the transmission of the communication. Fla. Stat. § 90.502(1)(c).

■ "[F]or a privileged document to lose its protected status, it must be found that the holder of the privilege intentionally waived its rights. In the case of the attorney-client privilege, it is the client who holds the privilege and who must be found to have intentionally waived his rights." *Smith v. Armour Pharm. Co.,* 838 F.Supp. 1573, 1576 (S.D.Fla. 1993).

■ The attorney work-product doctrine protects material prepared in anticipation of litigation or for trial. *Heartland Express, Inc., of Iowa v. Torres,* 90 So.3d 365, 367 (Fla. 1st DCA 2012). The mental impressions, conclusions, opinions, legal theories of an attorney are also protected. *Id.*

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires that a privilege log sufficiently describe the privileged documents so as to permit other parties, including the court, to assess the applicability of the privilege.

■ In this instance, the Court finds the privilege logs do not sufficiently describe the author(s) of the communications or the recipients, so as to permit the Court to access the applicability of the asserted privilege. For example, many of the authors and recipients of the communications have not been identified by Underwriters.[5] As a result, the Court is unable to ascertain who such individuals are in relation to Underwriters, or what their role was in relation to the subject communication(s). A complete resolution of the claims of privilege by Underwriters depends upon the proper characterization of the relationships among the parties to the communications. Furthermore, in order to make an informed decision with respect to the documents claimed as privileged, the Court must review documents *in camera.*

In addition to submitting the subject documents for an *in camera* inspection, Underwriters shall file a memorandum setting forth their reasons for the redaction or withholding of each document. The memorandum shall, at a minimum,

---

**5.** The privilege logs identify authors and recipients by name only – no further information is provided. In addition, Underwriters' filings in relation to the Motion identify only a few of the individuals listed in the privilege logs.

sufficiently identify each author and recipient of the communication by providing: (1) the individual's name; (2) his or her employer at the time of the communication; (3) whether they are an attorney; (4) if they are an attorney, who they represented at the time of the communication; and (5) if they are not an attorney, the individual's position or role in the company that employed them at the time of the communication.

Without disclosing the content of the communication, the memorandum shall additionally state the purpose of the communication, and explain the reason(s) the communication was disseminated to its recipient(s).[6] Further, the memorandum must explain how each recipient played an indispensable role in the communication process. *See United States v. Pepper's Steel & Alloys, Inc.*, 1998 WL 964185, at *2 (S.D.Fla. Mar. 19, 1991).

■ As an ancillary matter, in its Reply (Doc. 490), TBW states that the day after it filed the instant Motion, Stateside's designated representative, Richard Nowell, appeared for deposition. TBW states that in its opinion, Mr. Nowell was wholly unprepared for said deposition (*id.* at 11–13). TBW therefore requests, pursuant to Rule 30(a)(2)(A)(ii) of the Federal Rules of Civil Procedure, that the Court reconvene Stateside's deposition and award TBW its attorneys' fees and costs in preparing the motion (*id.* at 13). A motion of this sort, filed in a reply brief, is procedurally improper. It will therefore be denied without prejudice.

Lastly, in its joinder (Doc. 471), Sovereign seeks Underwriters' non-privileged claim documents. In the Response (Doc. 485), Underwriters state they have produced all non-privileged claim documents. In its reply in support of its joinder (Doc. 489), Sovereign requests that Underwriters identify by Bates range those documents that originated from its claim files, as well as specific claim documents identified in the privilege logs (Doc. 489 at 3, 8). The Court will require Underwriters to identify such documents. Once Sovereign has had an opportunity to review this information, it may renew its motion if necessary.

### III. Conclusion

Based on the foregoing, it is **ORDERED:**

1. Within forty five (45) days of the date of this Order, Underwriters shall submit the redacted and withheld documents to the Court, under seal, for an *in camera* inspection. In this regard, with respect to redacted documents, Underwriters shall submit a copy of each document with its redactions and a copy of each document without redactions.

2. Within forty five (45) days of the date of this Order, Underwriters shall file a memorandum setting forth a detailed explanation as to the basis for each assertion of privilege as provided above.

3. The moving parties will have twenty one (21) days from the filing of Underwriters' memorandum within which to file responsive memoranda.

4. TBW's motion, pursuant to Rule 30(a)(2)(A)(ii), made in the Reply (Doc. 490), is denied without prejudice.

5. Within fourteen (14) days of the date of this Order, Underwriters shall

---

**6.** With respect to any communication created or received by Stateside, Underwriters must identify whether Stateside was acting as Underwriters' agent at the time of the communication.

identify to Sovereign, by Bates range, those documents produced through discovery that originated from its claim files, as well as specific claim documents identified in the privilege logs.